The STATE of Texas ex rel. Lorraine
O. LATTY, Appellant,

v.

Kris OWENS, Appellee.

No. 06–94–00078–CV.

Court of Appeals of Texas,
Texarkana.

Feb. 16, 1995.

Rhonda Amkraut Pressley, Asst. Atty. Gen., Child Support Div., Austin, for appellant.

David C. Turner, Jr., Dan Meehan, Bonham, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

The State of Texas appeals from a judgment that Kris Owens was not the father of Lorraine O. Latty's child on the basis that the paternity testing results, the pleadings, exhibits, and affidavits were excluded by the trial court. The State contends that (1) the trial court did not have plenary power to sign a second order on December 9, 1993, 135 days after an initial judgment had been signed, (2) the trial court erred in excluding the petitioner's pleadings, exhibits, and affidavits, (3) the trial court erred in excluding paternity testing results, (4) the trial court abused its discretion in applying "death penalty" sanctions because in this case they violate the requirements of Texas Rule of Civil Procedure 215, (5) "death penalty" sanctions imposed on the State violated the due process and due course of law provisions under the United States and Texas Constitutions, and (6) the trial court erred in failing to appoint an attorney ad litem for the minor child, as there was legally and/or factually insufficient evidence to show that the child's interests were adequately represented.

The Texas Attorney General's office brought suit against Owens at the request of the Louisiana Attorney General's office on behalf of Latty, a Louisiana resident. A family court heard the case. That court ordered the alleged father, the mother, and the child to submit to blood testing pursuant to the Texas Family Code. TEX.FAM.CODE ANN. §§ 13.02, 13.03(a) (Vernon Supp.1995). After positive paternity testing results were admitted into evidence, Court Master Martinez entered a positive paternity judgment against Owens and ordered him to pay $135 per month in child support. Owens exercised his right to a trial de novo in the district court.

In the district court, a hearing was conducted on August 6, 1993, in which the State

attempted to introduce the results of the paternity testing into evidence. Owens objected, arguing that Latty's answers to interrogatories did not name the expert who conducted the tests. The court continued the hearing, allowing Latty to supplement her interrogatory responses. The hearing was reconvened on September 10, 1993. In Latty's supplemented responses, however, she listed the incorrect author of the paternity report, she failed to list herself as a person with knowledge of relevant facts, and her answers were verified by her Louisiana attorney rather than herself. Upon objection by Owens, the trial court excluded the results of the paternity testing, as well as the pleadings, exhibits, and affidavits.

The State first contends that the trial court erred in signing a second order dismissing the case on December 9, 1993, because it was outside of the plenary power of the court. The order adopting the master's report was signed by the trial court on July 27, 1993. The State argues that this was a final judgment; therefore, the court held plenary power over this case for only thirty days pursuant to TEX.R.CIV.P. 329b(d). Thus, the trial court had until August 27, 1993, to vacate or modify its judgment. The State argues that because the order dismissing the case was signed on December 9, 1993, 135 days after the judgment was signed, plenary power of the trial court had terminated.

■ Once a trial court loses plenary power over its judgment, the judgment becomes final and any attempt to exercise further jurisdiction over the judgment, except to correct clerical errors, will be set aside as void. *See Graham Nat'l Bank v. Fifth Court of Appeals,* 747 S.W.2d 370 (Tex.1987); *Times Herald Printing Co. v. Jones,* 730 S.W.2d 648, 649 (Tex.1987). The Texas Government Code provides:

> After the master's report is filed, **and unless the parties have filed a written notice of appeal to the referring court,** the referring court may adopt, approve, or reject the master's report, hear further evidence, or recommit the matter for further proceedings as the referring court consid-

ers proper and necessary in the particular circumstances of the case.

TEX.GOV'T CODE ANN. § 54.011 (Vernon 1988) (Emphasis added.) This statute grants the authority to the trial court to adopt the court master's report **only** if no written notice of appeal has been filed with the referring court. When a notice of appeal is timely filed, Section 54.012 applies, which requires a hearing de novo. *See* TEX.GOV'T CODE ANN. § 54.012 (Vernon 1988). This point of error is overruled.

■ In the case at bar, a notice of appeal was filed with the referring court on June 17, 1993, over one month before the order was signed. The trial court, therefore, had no authority to enter the July 27, 1993 judgment. Thus, no final judgment was entered and the court maintained jurisdiction. This point of error is overruled.

The State next contends that trial court erred in excluding the State's pleadings, petition, testimony, affidavits, and exhibits. These items were excluded by the trial court because Latty had verified these items, yet she failed to identify herself as someone having knowledge of relevant facts.

The discovery sanctions imposed by a trial court are within that court's discretion and will be set aside only if the court clearly abused its discretion. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986); *Fiduciary Mortgage Co. v. City Nat'l Bank,* 762 S.W.2d 196, 205 (Tex.App.–Dallas 1988, writ denied). The trial court's discretion is broad. *Carr v. Harris County,* 745 S.W.2d 531, 532 (Tex.App.–Houston [1st Dist.] 1988, no writ).

The State first argues that the trial court erred in refusing to take judicial notice of the pleadings filed in the case, including the petition, exhibits, and affidavits, as these documents are admissible by statute. The Texas Family Code provides:

> A verified petition, affidavit, document substantially complying with federally mandated forms, and a document incorporated by reference in any of them, not excluded under the hearsay rule if given in person, is admissible in evidence if given

under oath by a party or witness residing in another state.

TEX.FAM.CODE ANN. § 21.28 (Vernon Supp. 1995).

When a trial court takes judicial notice of a fact, that fact is taken as true. *See Emerson v. State,* 880 S.W.2d 759 (Tex. Crim.App.1994). This statute does not require the court to take these items as true, it only requires the trial court to admit the items into evidence. The trial court did not err in refusing to take judicial notice of the pleadings.

Second, the State argues that the trial court erred in excluding the pleadings, petition, testimony, exhibits, and affidavits because there was good cause sufficient to require admission. The Texas Rules of Civil Procedure provide that a party shall be entitled to present evidence excluded due to the failure of a party to respond to a discovery request if the trial court finds good cause. TEX.R.CIV.P. 215(5). A party who does not disclose his or her own name in response to a potential witness interrogatory may testify when his other identity as a potential witness is certain and when his or her personal knowledge of relevant facts has been communicated to all other parties at least thirty days in advance of trial. *Smith v. Southwest Feed Yards,* 835 S.W.2d 89 (Tex.1992). In *Celso v. Celso,* the court found that a spouse who is a party to a divorce suit should be allowed to testify despite the fact that the party was undisclosed. 864 S.W.2d 652, 654 (Tex.App.–Tyler 1993, no writ). Allowing the spouse to testify could not be considered to be a return to trial by ambush, because a spouse in a divorce proceeding is obviously a person with knowledge of relevant facts. *Ramirez v. Ramirez,* 873 S.W.2d 735, 739–40 (Tex.App.–El Paso 1994, no writ).

In the case at bar, it was clear to all parties that the mother in a paternity suit is a person with knowledge of relevant facts. Owens was informed of this fact in the master's hearing thirty days before trial. The documents should, therefore, not be disallowed because she failed to disclose herself as a person with knowledge of relevant facts

in her interrogatories. This point of error is sustained.

The State next contends that the trial court erred in excluding the paternity testing results. The trial court excluded the paternity testing results when it sustained Owens's three-pronged objection of hearsay, failure to verify interrogatory responses, and failure to identify the paternity expert. Therefore, the State must refute all three grounds in order to show that the court erred.

The first ground for exclusion advanced by Owens was that the test results were hearsay. The admission or exclusion of evidence is within the discretion of the trial court. *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). The State argues that the paternity testing results are admissible under a statutory exception to the hearsay rule. The trial court stated in the findings of fact and conclusions of law that the paternity testing results were excluded as hearsay which did not meet any of the exceptions to the rule. The Texas Family Code states that "[a] verified written report of a paternity testing expert is admissible at the trial as evidence of the truth of the matters it contains." TEX. FAM.CODE ANN. § 13.06(b) (Vernon Supp. 1995). This language creates a specific exception to the hearsay rule for these paternity testing results. Hearsay was, therefore, an improper basis for excluding paternity testing results.

Owens's second and third bases for exclusion were that the paternity expert was not identified in Latty's answers to interrogatories and that the responses were not properly verified.

In response, the State first argues that the paternity testing was improperly excluded because admission of the report is not contingent upon action of a party to the suit. The State contends that the court is required to order testing and, therefore, that the expert and testing results are offered by the trial court, not by the plaintiff.

The Family Code provides:

The court may appoint one or more experts qualified in paternity testing to perform the tests. The court may determine

the number and qualifications of the experts and shall prescribe the arrangements for conducting the tests.

TEX.FAM.CODE ANN. § 13.03(a) (Vernon Supp. 1995). The master appointed the expert on November 9, 1992, and this was approved by the trial court judge on November 20, 1992. This expert was the court's expert rather than the State's. The State was, therefore, under no duty to disclose this expert witness. The name of the court-appointed paternity test expert, along with his address and telephone number, was listed on the test results. The court ordered that a copy of the test results be given to each party and the court. The paternity testing results were improperly excluded by the trial court.

The State also argues that good cause existed to allow the test results to be admitted. The Texas Rules of Civil Procedure provide that a party shall be entitled to present evidence that would otherwise be excluded due to that party's failure to respond to a discovery request if the trial court finds good cause. TEX.R.CIV.P. 215(5).

■ The State points out that the purpose of discovery is to prevent trial by ambush and argues that there is no risk of this in the case at bar. Discovery may be defined to be the disclosure of facts, deeds, instruments, documents, or other things that are within the exclusive possession of one party and that are necessary to the party seeking discovery as a part of an action pending or contemplated by the latter or as evidence of his or her rights in such proceedings. *B.F. Avery & Sons Plow Co. v. Mayfield,* 111 S.W.2d 1134 (Tex.Civ.App.—Fort Worth 1937, writ dism'd). The name of the court-appointed paternity test expert, along with his address and telephone number, was listed on the test results, which were furnished to Owens's counsel prior to trial. These exact results were admitted into evidence in the paternity hearing by the court master before this case was appealed to the district court. Owens was given clear notice that the test results would be offered into evidence. There is good cause to allow the test results into evidence, though the expert was not identified by Latty.

Under its next point of error, the State argues that the trial court abused its discretion in applying "death penalty" sanctions, as the sanctions violate the "just" requirement of TEX.R.CIV.P. 215. The State contends that the trial court's exclusion of the paternity testing results was a "death penalty" sanction. In *Revco, D.S., Inc. v. Cooper,* the court determined that, when exclusion of evidence has a death penalty effect on a case, the case should be analyzed in the same manner as other drastic death penalty sanctions. 873 S.W.2d 391 (Tex.App.—El Paso 1994, no writ). In the case at bar, the trial court's exclusion of paternity testing results leaves the State with no scientific proof of paternity. This case will be analyzed under a death penalty sanction analysis.

■ Discovery sanctions must be just. TEX.R.CIV.P. 215(2)(b); *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). Two factors mark the bounds of the court's discretion in order for sanctions to be just. The first is that a direct relationship between the offensive conduct and the sanction imposed must exist. *TransAmerican,* 811 S.W.2d at 917. This means that a party should not be punished for counsel's conduct in which the party is not implicated apart from having entrusted to counsel its legal representation. *Id.* at 913.

■ The second factor is that the sanction imposed must not be excessive. *Id.* at 917. In other words, the punishment must fit the crime. *Chrysler Corp v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992); *TransAmerican,* 811 S.W.2d at 917. A court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse. *Chrysler,* 841 S.W.2d at 849; *TransAmerican,* 811 S.W.2d at 917; *Braden v. Downey,* 811 S.W.2d 922, 929 (Tex.1991).

■ The offensive conduct was committed by an attorney with the Texas Attorney General's office, while the party suffering the punishment was an indigent child in Louisiana. Here no direct relationship exists between the offensive conduct and the sanction.

The first prong of the *TransAmerican* test has not been met.

This case is complicated by the fact that, while the case is carried out for Latty's benefit, it is conducted by the Texas Attorney General's office. Thus, when interrogatories were sent to Latty, she was in no better position to answer the questions pertaining to the court-appointed expert than was Owens. When a response was made, there does appear to be a good faith attempt to verify them by her Louisiana attorney.[1]

The test results and pleadings appear to have been excluded, not in an attempt to force compliance with discovery request but simply as punishment for failure to do so. The sanctions, therefore, fail to meet the second prong of *TransAmerican*, and present a violation of the *just* requirement under Tex.R.Civ.P. 215(2)(b). Because both prongs of the *TransAmerican* test have not been met, these sanctions are not just. This point of error is sustained.

 By its next point of error, the State contends that "death penalty" sanctions on the State violated the due process and due course of law provisions under the United States and Texas Constitutions. Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *TransAmerican*, 811 S.W.2d at 918. Even then, lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender. *Chrysler Corp.*, 841 S.W.2d at 849. In the present case, the violation does not establish a presumption that the State's case has no merit.

 By its next point of error, the State contends that the trial court erred in failing to appoint an attorney ad litem for the minor child, because there was not legally and/or factually sufficient evidence to show that the child's interest was adequately represented. The appointment of an attorney ad litem in a paternity suit is within the discretion of the trial court. *See Brown v. State ex rel. Jarvis*, 808 S.W.2d 628 (Tex.App.—Austin 1991, writ denied).

The trial court is to appoint an attorney ad litem, "[i]f the court finds that the interests of the child will not be adequately represented by a party to the suit or are adverse to that party." Tex.Fam.Code Ann. § 13.07 (Vernon Supp.1995). The trial court concluded under the findings of fact and conclusions of law that the Office of the Attorney General of the State of Texas could adequately represent the best interests of the child. Under the Texas Family Code, there is a rebuttable presumption that the interests of the child will be adequately represented by the party bringing suit. Tex.Fam.Code Ann. § 13.07. In the case at bar, there is a presumption in support of the trial court's finding that the Office of Attorney General adequately represented the child's best interests.

The State argues that the outcome of the case should serve as proof to rebut the presumption that the child's interests were adequately represented. The trial court, however, is required to decide if the Attorney General's office could represent the child's interests at the beginning of the trial, without the benefit of hindsight. When the trial court decided not to appoint an attorney ad litem, there was no evidence to rebut the presumption that the State of Texas would adequately represent the child's interests. This point of error is overruled.

The judgment of the trial court is reversed, and the cause is remanded for a new trial consistent with the ruling of this Court.

---

1. The State contends that a person's attorney can verify on behalf of the client under Louisiana law.