**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00453-CV**
_____

**ROBERT GERALD SHERWOOD SR., Appellant**

**V.**

**JANET LYNNE SHERWOOD, Appellee**

_____

**On Appeal from the 1A District Court**
**Tyler County, Texas**
**Trial Cause No. 22498**
_____

**MEMORANDUM OPINION**

In this appeal, we address whether the trial court erred by imposing a death penalty sanction due to the appellant's failure to fully answer the appellee's discovery. We hold the trial court abused its discretion by imposing a death penalty sanction; we reverse and remand that portion of the trial court's judgment dividing the parties' property for a new trial to allow the trial court to make a just and right division of the parties' marital estate.

1

## Background

In issue one, Robert Gerald Sherwood Sr., complains the judgment should be reversed because the trial court failed to consider or attempt lesser sanctions before it signed an order striking his pleadings. In issue two, Robert complains the trial court abused its discretion by classifying all of the parties' property in the decree as community property.

In April 2012, Janet Lynne Sherwood sued Robert for divorce. After Robert answered, Janet served him with interrogatories and a request for production. By agreement, Janet gave Robert an extension to answer her discovery. After the deadline for answering the discovery had passed, Janet filed a motion to compel discovery; she requested that the trial court order Robert to file responses. During the hearing on Janet's motion to compel, Robert indicated that he would file answers to Janet's discovery requests in eighteen days. *See* Tex. R. Civ. P. 11. However, the record does not contain an order signed by the trial court regarding the agreement the parties reached at the hearing.

Several days after the agreed deadline to answer Janet's discovery had passed, Robert's attorney filed a motion to withdraw. The motion to withdraw states that the trial court "ordered all discovery documents to be compelled to opposing counsel by October 1, 2012[,]" and that because of counsel's "inability to

2

effectively communicate with [Robert], [Robert's attorney] has been unable to meet this deadline." The trial court signed an order allowing Robert's attorney to withdraw on October 22.

On the same day the trial court signed the order allowing Robert's attorney to withdraw, Janet filed a motion requesting that the trial court sign an order to modify the temporary orders governing the parties' divorce. Janet's proposed order on that motion asked the trial court to order Robert to answer Janet's discovery on October 1, a date that at that point had already passed. The clerk scheduled a hearing to occur in November on Janet's motion to modify temporary orders. When Robert appeared for the November hearing, acting without the benefit of counsel, he advised the trial court that he had not received proper notice regarding the purpose of the November hearing. When the trial court noted that its file also did not have the documents referred to in the motion, the trial court suggested that Janet's attorney and Robert confer. Janet's attorney replied to that suggestion, stating: "I'll visit with him, Judge. If we can't get it worked out, we'll be back." Less than an hour later, Janet's attorney advised the court that Robert left the courthouse without talking to him. At Janet's attorney's request, the trial court then signed Janet's proposed order, which ordered Robert to answer Janet's discovery, albeit in October, a date that by the November hearing had passed.

3

Approximately three weeks after the trial court signed the order compelling Robert's answers, Janet filed a motion for sanctions and requested that the trial court strike Robert's pleadings. The certificate of service accompanying the motion reflects that Robert was served by certified mail with the motion to strike. The motion asserts that Robert had failed to comply with a court order regarding discovery, but a copy of the trial court's order compelling Robert to comply with Janet's discovery was not attached as an exhibit to Janet's motion for sanctions. On the same day Janet filed her motion to strike Robert's pleadings, the trial court's clerk signed a notice of hearing, which advised that the trial court would hear the motion for sanctions in December.

At the December hearing on the motion for sanctions, Robert (still without counsel) did not appear.[1] At the conclusion of the hearing, the trial court signed an

---

[1]Although the motion to withdraw filed by Robert's attorney lists 321 White Oak Trail as Robert's address, and the order on the motion to withdraw recites that Robert's last known address is 321 White Oak Trail, the certificate of service on Janet's motion for sanctions reflects that Janet sent the motion to Robert at 321 White Oak Drive. While Robert notes this discrepancy in his reply brief, asserting that "Janet's attorney should have known something was amiss" when he did not appear at the December hearing, the clerk's record shows that Robert listed his address as 321 White Oak Drive in a pro se motion that he filed shortly after the trial court granted his attorney's motion to withdraw. Moreover, the brief Robert filed on the merits does not assert that Robert did not receive Janet's motion for sanctions, nor did Robert complain in the trial court that he did not receive a copy of the motion. Given our resolution of Robert's appeal, we need not address

order striking all of Robert's pleadings for his abuse of the discovery process. The transcript from the hearing on Janet's motion to strike does not show that the trial court contemplated any sanction other than a sanction striking all of Robert's pleadings.

Approximately two weeks after the trial court struck Robert's pleadings, Robert (acting without benefit of counsel) filed a motion stating that he had "only now become aware of this damaging fact which has put me at a serious disadvantage." Robert's motion states that he could provide "the facts and details of this vital evidence when it is requested by the court." Robert's motion, when liberally construed, seeks relief from the order striking his pleadings and asks that he be allowed to show that some of the property being claimed as community property was actually his separate property. The record does not show that the trial court ever considered or ruled on Robert's motion.

Approximately two weeks before the final hearing, Robert filed his "COUNTER CLAIM AGAINST ORIGINAL PETITION FOR DIVORCE." The counterclaim asserts that Janet, as a result of the divorce proceedings, denied Robert access to the documentation he needed to present his claim that some of the

---

Robert's argument that he was not properly served with Janet's motion for sanctions, an argument he first raised in his reply brief. *See* Tex. R. App. P. 47.1.

property at issue in the divorce was his separate property; the counterclaim also asserts that Robert's prior counsel failed to assist him in presenting this claim. The record does not show that after the trial court ordered Robert's pleadings stricken, that it ever gave Robert permission to file additional pleadings.

In March 2013, the trial court conducted a final hearing on the parties divorce. At the beginning of the final hearing, Robert (without the benefit of counsel) asked the trial court to continue the case until April so that he could "assemble all of the information that [he had] for separate property, because everything other than the one house up in Arkansas is separate property." Robert also stated during the final hearing that "I've got the only documents and information that I need for that; and I just need time to assemble all that stuff, put it together." The trial court denied Robert's request to continue the final hearing.

During the final hearing, Janet testified that she wanted the trial court to classify all of the assets of the parties as community property. Although given the opportunity to do so, Robert did not cross-examine Janet during the hearing. Additionally, the trial court advised Robert that he could call witnesses or introduce evidence during the hearing; but, Robert did not attempt to introduce any of the documents that he apparently had with him during the hearing. Although Robert did testify during the hearing, his testimony does not address his claim that

6

some of the property at issue in the divorce should be classified as his separate property. Instead, he only addressed in his testimony whether his attorney, who had intervened to collect unpaid attorney's fees, had properly credited his account with the payments that he claimed he had made.

Following the trial, Robert, acting with counsel, filed a motion for new trial. Robert's motion asserts that the "[f]ailure to properly designate certain properties as separate to [Robert] is a miscarriage of justice and against the facts which can be presented in a new trial." The motion for new trial does not contain any exhibits relevant to his claim that some of the property at issue was his separate property.

In Janet's reply to Robert's motion for new trial, Janet asserts that "[Robert] was given ample opportunity through two other attorneys to respond to discovery and to present his case to the Court. [Robert] has intentionally ignored and failed to cooperate with the Court's rulings and deadlines." Asserting that Robert's failure to provide discovery was intentional, Janet requested that Robert's motion for new trial be denied. Subsequently, the trial court denied Robert's motion for new trial, and Robert appealed.

Analysis

Generally, trial courts are not allowed to use sanctions to prevent a party from presenting the merits of that party's claims. The Texas Supreme Court has

explained: "Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991). A death penalty sanction is permissible if it is "no more severe than required to satisfy legitimate purposes." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

On the dissolution of a marriage, all of the property possessed by either spouse is presumed to be community property; the spouse who claims that some of the property is separate must prove the property is separate by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003 (West 2006). A general denial "properly raises the issue of ownership of the property." *Anderson v. Anderson*, 282 S.W.3d 150, 155 (Tex. App.—El Paso 2009, no pet.); *Chavez v. Chavez*, 269 S.W.3d 763, 766 (Tex. App.—Dallas 2008, no pet.); *see also* Tex. R. Civ. P. 92 ("A general denial of matters pleaded by the adverse party which are not required to be denied under oath, shall be sufficient to put the same in issue."). In the absence of a pleading, which may consist of a general denial, which puts the character of the property in issue, the trial court cannot render a judgment characterizing parts of the divorcing couple's property as separate. *See* Tex. R. Civ. P. 301 (requiring the

8

judgment to "conform to the pleadings"); *see also Starr v. Ferguson*, 166 S.W.2d 130, 132 (Tex. 1942) ("There must be pleadings as well as proof.").

The sanction the trial court imposed on Robert in this divorce case relates to Robert's failure to answer Janet's discovery. "The legitimate purposes of discovery sanctions are threefold: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar misconduct; and 3) to punish violators." *Blackmon*, 841 S.W.2d at 849. Because the trial court struck Robert's original answer, a general denial, and never granted him the permission he requested on several occasions to amend and present evidence regarding his claim, Robert never presented any evidence to support his claim that some of the property at issue was actually his separate property. Thus, under the circumstances presented on this record, the trial court's order striking Robert's pleadings operated as a death penalty sanction regarding his proof relating to the property classification of the divorcing couple's property. The trial court never withdrew the sanction despite Robert's requests to be allowed to proceed on his claim, and it appears that Robert did not understand whether the trial court would permit him to present evidence on his claim that some of the property at issue was not community property.

Even if a party's conduct for abusing the discovery process should be sanctioned, the sanction the trial court imposes must be "'just.'" *Id.* For a sanction

to meet that standard, there must be a direct relationship between the party's offensive conduct and the sanction imposed, and the sanction the trial court chooses to impose must not be excessive. *Id*.; *TransAmerican*, 811 S.W.2d at 917. Even when a party has acted in flagrant bad faith or with a callous disregard for the rules of discovery, a "lesser sanction[] must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender." *Blackmon*, 841 S.W.2d at 849.

According to Janet, Robert's failure to request a lesser sanction constitutes a waiver of any appellate complaint regarding the sanction. But, we cannot conclude on the record before us that Robert never asked the trial court to impose a lesser sanction. The record shows that Robert asked the trial court to reconsider its decision to strike his pleadings (1) in a motion filed approximately two weeks after the trial court struck his pleadings, (2) in his counterclaim, which he filed approximately two weeks before the final hearing, and (3) during the final hearing. While none of Robert's subsequent pleadings or requests used the term "lesser sanctions," they apprised the trial court that Robert wanted permission to proceed on his claim that some of the property at issue was actually his separate property. Given that Robert acted without the benefit of counsel with respect to these requests, we conclude that collectively, they were sufficient to make the trial court

10

aware that he wanted to present a claim that some of the property was separate property, even though the trial court had sanctioned him by striking his pleadings. *See* Tex. R. App. P. 33.1(a)(1)(A). We are not persuaded that Robert waived his right to complain on appeal of the trial court's decision striking his pleadings.

The parties disagree about whether the trial court attempted to impose a lesser sanction. In her brief, Janet did not assert the trial court tested or considered a less stringent sanction before it struck all of Robert's pleadings. But, in oral argument, Janet's counsel suggested that the trial court's order compelling Robert to answer the discovery constitutes the trial court's attempt to test a lesser sanction. That order, however, did not punish Robert for failing to comply with any prior court orders, so it was not a sanction, much less a lesser one. And, before the trial court struck Robert's pleadings, there were no orders punishing Robert for discovery abuse. We conclude the record shows the trial court did not test any lesser sanction before striking all of Robert's pleadings.

Janet also argues that the trial court's sanction did not operate as a death penalty sanction. In support of her argument, Janet points to the trial court's invitation to Robert to testify during the final divorce hearing. The record shows that when Janet rested, the trial court asked Robert whether he had any witnesses and advised him that he could take the stand. When Robert responded that he did

not know anyone in the area, the trial court asked if he wanted to put anything into evidence. Robert responded that he could make some copies of his original documents and have them sent, but the trial court responded: "No. At the hearing. I'm talking about: Do you have any evidence you want to put on right now?" After Robert stated, "Well, I don't know[,]" the trial court replied, "All right. Thank you." Then, the trial court allowed Robert's former attorney, who had intervened seeking to recover unpaid fees, to testify. After Robert's former attorney testified, Robert testified that he had paid his former attorney more money than the attorney acknowledged that he had been paid.

It is not apparent from the final hearing that during the final hearing the trial court would have admitted the documents Robert apparently had in his possession that he indicated related to his separate property claim, nor did the trial court ever state during the hearing that it was reversing course from its prior ruling and that it would actually consider whatever evidence or testimony Robert wanted to provide regarding his claim about how the property at issue should be classified. The trial court failed to explain to Robert that it would consider the originals of the documents he had with him if they were introduced, and instead, the trial court's reaction was that the court would not delay the proceedings to allow Robert to provide copies. Finally, without pleadings, any proof on the issue regarding the

characterization of the divorcing couple's property was irrelevant to the judgment the trial court would have been required to enter, as once the trial court struck all of Robert's pleadings, Robert's claim that he had separate property was not at issue. *See* Tex. R. Civ. P. 301 (requiring the trial court's judgment to conform to the pleadings); *see also* Tex. R. Civ. P. 63 (requiring leave of court to file amended pleadings within seven days of trial).

Although Janet has not argued that the order striking Robert's pleadings was based on Rule 193.6 of the Texas Rules of Civil Procedure, in evaluating whether the judgment should be reversed, we also consider if the judgment can be affirmed under that rule. Rule 193.6(a) provides that "[a] party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified" unless the trial court finds good cause for the delay or the absence of unfair prejudice to the requesting party. Tex. R. Civ. P. 193.6(a). The analysis that applies concerning death penalty sanctions does not apply if the evidence at issue was excluded under Rule 193.6. *See Campos v. State Farm Gen. Ins. Co.*, 943 S.W.2d 52, 55 (Tex. App.—San Antonio 1997, writ denied) (concluding that the *TransAmerican*

13

analysis that concerns the review of a death penalty sanction did not apply where the testimony was excluded at trial because it was not properly disclosed).

In this case, the trial court signed an order striking all of Robert's pleadings as a death penalty sanction before the trial occurred. Additionally, while the trial court gave Robert the opportunity to testify, it did not exclude any of his evidence at the final hearing under Rule 193.6. Finally, the discovery instruments that Janet served on Robert are not in the clerk's record, so it does not appear they were ever before the trial court. Therefore, even had Robert attempted to offer his evidence, the record before us does not support any claim that the trial court excluded because it addressed information regarding Robert's separate property claim on which Janet sought discovery. Based on the information before use, we conclude the trial court did not exclude any evidence based on Rule 193.6.

We must also consider whether the trial court's decision to strike Robert's pleadings caused any harm. Tex. R. App. P. 44.1(a) (requiring the appellant to show on appeal that the error being complained of "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals"). As previously explained, it appears that Robert failed to present any evidence he might have had regarding his separate property claim because the trial court struck his pleadings and then never granted

14

leave to allow Robert the right to file additional pleadings. In conjunction with Robert's first attempt to get relief from the trial court's order, Robert alleged that some of the property that Janet characterized as marital property was "purchased with the funds from my inheritance[.]" Additionally, the inventory Janet offered into evidence at trial lists one of the assets of the marital estate, valued at approximately $30,000, as property traceable to the estate of Charles and Della Sherwood. This information, although meager, prevents our engaging in the presumption that Robert's claim regarding separate property lacks merit.

The divorce decree the trial court rendered treats all of the divorcing couple's property as community property. While the judgment recites there was no evidence that the parties owned separate property, the lack of evidence is explained, in part, by the court's sanction. Therefore, we are also unable to hold Robert wholly responsible for the state of the record regarding Robert's separate property claim. We conclude the judgment the trial court rendered was improper because the sanction deprived Robert of the opportunity to have the trial court hear evidence and adjudicate his separate property claim.[2] Under the circumstances

---

[2]We do not hold or imply that any of the property at issue is separate property. Assuming that Robert is granted leave to file amended pleadings on remand, and that the evidence concerning Robert's separate property claim is not excluded under Rule 193.6, Robert's separate property claim is to be resolved on retrial.

shown here, we hold that the trial court's order striking all of Robert's pleadings probably caused the rendition of an improper judgment and prevented Robert from properly presenting his case on appeal. *See id.*

We conclude the trial court abused its discretion by imposing a death penalty sanction without first considering a lesser sanction, and we further conclude that the error was harmful. We affirm that portion of the judgment dissolving the marriage between the parties, and that portion of the judgment awarding attorneys' fees to Robert's former attorney. That portion of the judgment dividing the parties' marital estate is severed and reversed, and the issue of the division of the parties' property is remanded to the trial court for a new trial.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on May 1, 2014
Opinion Delivered August 21, 2014
Before McKeithen, C.J., Horton and Johnson, JJ.

16