Peters v









NO. 12-10-00086-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN RE:  KATHERINE K.
FACKRELL,        §                    

INDIVIDUALLY; KATHERINE K.                        

FACKRELL, ON BEHALF OF
GEAUX     §                    ORIGINAL PROCEEDING

CORPORATION; AND GEAUX                 
                      

CORPORATION, RELATORS                    
§







            MEMORANDUM
OPINION

            By petition for writ of mandamus, Katherine K. Fackrell, individually;
Katherine K. Fackrell on behalf of Geaux Corporation; and Geaux Corporation
challenge the trial court’s order of sanctions against them and subsequent
order denying their motion to reconsider.[1]  The real party in
interest is Gerald E. Fackrell, III.  We conditionally grant the petition.

 

Background[2]

The
underlying lawsuit involves a dispute between family members who are directors
and officers in Geaux Corporation, a closely held corporation.  At the time the
lawsuit was filed, Katherine Fackrell and her stepson, Gerald E. Fackrell, III,
were each a director and a 50% owner of Geaux.  Gerald Fackrell, Jr., who is
Katherine’s husband and Gerald III’s father, was also a director of Geaux.  Katherine
brought suit on behalf of the corporation against Gerald III.  Gerald Jr. is
aligned with Geaux in this litigation.

The Rule
11 Agreements and Discovery

Almost
immediately after suit was filed, the parties entered into a Rule 11 Agreement. 
Gerald III agreed to participate in directors’ meetings and execute loan
documents for Geaux.   And Geaux agreed to pay Gerald III a salary and not
remove him as an officer until May 31, 2007.  Months later, on August 31, 2007,
the parties entered into another Rule 11 Agreement in which Gerald III
agreed to sell his interest in Geaux and other related holdings.  The parties agreed
to select a business valuation expert to assess the value of Gerald III’s
interest.  According to the agreement, the expert’s assessment was not binding
on the parties.  If the parties could not agree on terms of a buyout of Gerald
III’s interest after negotiations and, if necessary, mediation, the matter would
proceed to court.  

On
October 29, 2007, Gerald III filed counterclaims and third party claims against
Katherine, Gerald Jr., and Geaux.  Katherine and Gerald, Jr. were sued
individually and as officers, directors, and shareholders of Geaux.  Along
with these claims, Gerald III served his first request for production on
Katherine “for the benefit of Geaux Corporation.”  By a Rule 11 Agreement
signed on November 19, 2007, the parties agreed that “all objections and
responses to all discovery requests served by [Gerald III] shall not be due
until 45 days after the date [the mediator] confirms in writing that mediation
was unsuccessful.”  Approximately one year later, Katherine, Gerald Jr., and
Geaux filed answers to Gerald III’s counterclaims and third party claims
against them.  They also filed individual counterclaims against Gerald III.  

On
June 12, 2009, Gerald III sent his second request for production and first set
of interrogatories to Geaux.  On July 15, 2009, Geaux filed objections to
Gerald III’s second request for production and first set of interrogatories, asserting
that the request and interrogatories violated the parties’ November 19, 2007 Rule
11 Agreement.  Geaux objected that mediation had not occurred and that objections
and responses to discovery were not due until forty-five days after the
mediator confirmed in writing that the mediation was unsuccessful.  Geaux also
filed a motion for protection based on the Rule 11 Agreement.  The trial court
granted Geaux’s motion for protection and stated that “all objections and
responses to any discovery requests propounded by [Gerald III] shall not be due
until November 12, 2009. . . .”  The trial court noted in the order that the
due date was the forty-fifth day after the mediation scheduled by the parties. 


Counsel
for Katherine, Gerald Jr., and Geaux filed a motion to withdraw from the case,
and the trial court granted the motion.  Counsel reminded Katherine, Gerald
Jr., and Geaux about several deadlines, but there is no record that he reminded
them of outstanding discovery.  Gerald III’s attorney reminded Katherine,
Gerald Jr., and Geaux that they needed to respond to Gerald III’s second
request for production and first set of interrogatories to Geaux.  There is no
record that they were reminded of Gerald III’s first request for production. 
On the due date, November 12, 2009, Geaux filed objections and responses to
Gerald III’s second request for production and first set of interrogatories. 
No timely objections or responses were filed to Gerald III’s first request for
production. 

The Motions
to Compel

On
September 3, 2008, Gerald III filed the first of what would become many motions
to compel.  This first motion to compel was directed to the “Plaintiff,” but
did not specifically identify the plaintiff.  By this motion to compel, Gerald
III sought the production of documents necessary for the business valuation
expert, Rusty Bundy, to complete the valuation of Gerald III’s interest in
Geaux.  The documents were requested by Bundy in electronic mail correspondence
sent to counsel for Geaux on August 17 and August 18, 2008.   Additionally,
Gerald III sought the production of documents responsive to his first request
for production.  Gerald III stated that this request sought information either directly
related or at least relevant to his ownership interest in Geaux.

Katherine
responded to Gerald III’s motion to compel.  In her response, Katherine stated,
in part, that  “the parties entered into another Rule 11 Agreement on November
19, 2007, a copy of which is attached. . . .”  Pursuant to that Rule 11
Agreement, the deadline for responding to Gerald III’s first request for
production had not passed when Gerald III filed his first motion to compel. 
The trial court conducted a hearing on Gerald III’s motion to compel and recognized
that the discovery responses were not due.  In fact, Gerald III’s attorney admitted
at the hearing that Geaux “didn’t have to respond specifically to [Gerald
III’s] request for production” because of the Rule 11 Agreement, but instead
needed to produce the documents necessary for Bundy to complete his business
valuation.  After the hearing, the trial court “in all things” granted Gerald
III’s motion to compel and ordered Katherine and Geaux to produce the documents
Bundy requested.  But the trial court’s order did not specifically refer to Gerald
III’s first request for production. 

Gerald
III then filed a first amended second motion to compel complaining that Geaux
was not paying his salary as agreed in the first Rule 11 Agreement.  The trial
court denied the motion.

Gerald
III filed a third motion to compel on February 19, 2009.  By this motion, Gerald
III sought the production of additional documents requested by Bundy on January
16, 2009, but did not mention his first request for production.  Gerald III
also sought sanctions against Katherine and Geaux in the amount of attorney’s
fees expended in the drafting, filing, and prosecuting of the third motion to
compel.  Geaux responded to this motion.  After a hearing, the trial court
granted Gerald III’s third motion to compel, ordered Katherine and Geaux to
produce the documents requested by Bundy, and sanctioned Katherine and Geaux in
the amount of the reasonable attorney’s fees Gerald III incurred in drafting,
filing, and prosecuting his third motion to compel.  However, the trial court
did not specify the amount of the reasonable attorney’s fees Gerald III had incurred
for the completion of these tasks.

Gerald
III then requested $2,556.00 as the reasonable attorney’s fees incurred in the
drafting, filing, and prosecuting of Gerald III’s third motion to compel. 
Katherine and Geaux believed that amount was unreasonable and did not pay it.  Consequently,
on April 16, 2009, Gerald III filed a motion to compel attorney’s fees, his
fourth motion to compel.  Katherine and Geaux responded.  The trial court
determined that Gerald III’s motion to compel attorney’s fees “shall be taken
up at the conclusion of the case, unless the court feels it needs to be
resolved because of further discovery disputes.”

Gerald
III then filed a fifth motion to compel against Katherine and Geaux seeking
payment of Geaux’s portion of Bundy’s bill.  Gerald III also sought sanctions
in the amount of $1,000.00 for attorney’s fees and costs incurred in filing his
fifth motion to compel.  Katherine filed a response to Gerald III’s fifth
motion to compel.  The trial court granted the motion to compel payment to
Bundy and held the request for sanctions under advisement pending prompt
compliance with the court’s order.

On
July 9, 2009, Gerald III filed his sixth motion to compel.  Gerald III’s sixth
motion sought to compel Katherine, Gerald Jr., and Geaux to produce additional
information regarding their expert witnesses.  The trial court did not rule on
this motion.  On July 15, 2009, Geaux filed a motion for protection seeking an
order enforcing the November 19, 2007 Rule 11 Agreement.

On
August 4, 2009, Gerald III filed his seventh motion to compel in which he
sought to compel Katherine, Gerald Jr., and Geaux to respond to Gerald III’s
second request for production and first set of interrogatories.  Katherine,
Gerald Jr., and Geaux filed a response to this motion.  The trial court did not
grant Gerald III’s seventh motion to compel, but instead granted Geaux’s motion
for protection and made the discovery responses due on November 12, 2009.

            On
November 25, 2009, Gerald III filed his eighth motion to compel in which he
sought to compel Geaux to respond to Gerald III’s first request for production,
second request for production, and first set of interrogatories.  Geaux did not
respond to Gerald III’s eighth motion to compel.  On December 21, 2009, the
trial court, without conducting a hearing, granted the eighth motion to compel
and ordered “death penalty sanctions [imposed] against Plaintiffs/Counter
Defendants.”  The trial court further ordered that “Plaintiffs/Counter
Defendants” pay Gerald III $4,000.00 for attorney’s fees and costs related to
the eighth motion to compel.  The trial court’s order includes a finding that
“Plaintiffs have engaged in conduct that constitutes sanctionable discovery
abuse, and that prior [s]anctions awarded by [the trial court] have not been
satisfactory in deterring Plaintiffs/Counter Defendants from engaging in such
conduct.”  On January 22, 2010, Geaux filed a motion for reconsideration. 
Gerald III responded to the motion to reconsider, and on February 10, 2010, the
trial court denied the motion.[3] 
On Gerald III’s motion and after a hearing, the trial court signed an order on
April 1, 2010 clarifying the December 21, 2009, sanctions order. 

            After
the clarification order, Katherine and Geaux filed a petition for writ of
mandamus in this court contending that the trial court’s order of death penalty
sanctions constitutes an abuse of discretion. They also filed a motion for
temporary relief requesting a stay of the trial in the underlying action
pending a ruling on the merits in this proceeding.  We granted the stay.

 

The Sanctions

            Initially,
we must determine the status of the trial court’s December 21, 2009, sanctions
order following the entry of the clarification order signed by the trial court
on April 1, 2010.   Katherine and Geaux argue that the sanctions include
striking their pleadings and dismissing the actions they brought.  Gerald III
argues that the trial court simply imposed a monetary sanction of $4,000.00 and
an inability to proffer documents as evidence that should have been produced in
response to the discovery requests.[4]

The
trial court held a pretrial hearing on February 18, 2010, during which it
became clear that the trial court believed the death penalty sanctions applied
to Katherine as well as Geaux.  However, even after the hearing, questions
remained concerning what petitions, answers, and counterclaims had been struck,
and the effect that the striking of these pleadings would have on the trial of
the case.

Gerald
III filed a motion for clarification on March 11, 2010.  On that same date,
Gerald III filed a motion for default judgment against Katherine.  The next
day, Gerald III filed amended counterclaims and amended third party claims
against Katherine, Gerald Jr., and Geaux.  On April 1, 2010, the trial court
signed an order clarifying its prior sanctions order.  The trial court set out thirty-eight
findings or conclusions in its clarifying order.  The trial court found that
the discovery in dispute in Gerald III’s eighth motion to compel was served to Geaux
and not Katherine individually.  Nevertheless, the trial court specifically
found that its sanction order struck the following pleadings: (1) the original
petition and application for injunctive relief filed by Katherine for the
benefit of Geaux, ( 2) the original answer of Katherine, and (3) the original
answer and counterclaim of Geaux.[5] 
However, because Gerald III had filed amended pleadings, the trial court
further clarified the sanctions order to allow Katherine and Geaux to respond
to the new pleading.[6] 
The trial court further stated, “The [sanctions order does] not restrict any
future filings by the parties (other than the stricken pleadings [cannot] be
refiled.)”  Finally, the trial court denied Gerald III’s motion for default
judgment against Katherine for the reasons set forth in the trial court’s
clarifying order.

After
giving full effect to every statement made by the trial court, we conclude that
under the December 21, 2009, sanctions order, Katherine and Geaux cannot
contest the allegations and claims made by Gerald III prior to that order.   But
they can contest new allegations and claims included in Gerald III’s amended
pleading filed thereafter.  Further, Geaux cannot bring the claims made against
Gerald III that were filed prior to the sanctions order.[7]  Thus,
the trial court’s December 21, 2009, sanctions order, even after clarification,
has the effect of striking pleadings, dismissing actions, and adjudicating
claims brought against Katherine and by and against Geaux.

 

Availability of Mandamus

Ordinarily,
mandamus will issue to correct a clear abuse of discretion where there is no
adequate remedy by appeal.  In re Cerberus Capital Mgmt., L.P.,
164 S.W.3d 379, 382 (Tex. 2005); Walker v. Packer, 827 S.W.2d
833, 839-40 (Tex. 1992).  With respect to the resolution of factual matters or
matters committed to the trial court’s discretion, we may not substitute our
own judgment for that of the trial court.  Walker, 827 S.W.2d at
839.  In such matters, the relators must establish that the trial court could
reasonably have reached only one decision.  Id. at 840.  Even if
the reviewing court would have decided the issue differently, it cannot disturb
the trial court’s decision unless it is shown to be arbitrary and
unreasonable.  Id.  Review of a trial court’s determination of
the legal principles controlling its ruling is much less deferential.  Id. 
A trial court has no discretion in determining what the law is or applying the
law to the facts.  Id.  Consequently, a clear failure by the
trial court to analyze or apply the law correctly constitutes an abuse of
discretion.  Id.  The party seeking the writ of mandamus has the
burden of showing that the trial court abused its discretion.  In re E.
Tex. Med. Ctr. Athens, 154 S.W.3d 933, 935 (Tex. App.—Tyler 2005, orig.
proceeding).

When
a trial court imposes sanctions that have the effect of adjudicating a dispute,
whether by striking pleadings, dismissing an action, or rendering a default
judgment, but do not result in rendition of an appealable judgment, the
eventual remedy by appeal is inadequate.  TransAmerican Natural Gas Corp.
v. Powell, 811 S.W.2d 913, 919 (Tex. 1991).  Because the trial court’s
order here struck Katherine’s and Geaux’s pleadings, appeal is an inadequate
remedy.   We therefore focus our inquiry on whether the trial court abused its
discretion in ordering the sanctions.

 

Death Penalty Sanctions

A
trial court may impose sanctions for filing frivolous pleadings and for discovery
abuse.  See Tex. R. Civ. P. 13,
215.  Under its inherent power, a trial court may impose sanctions “to the
extent necessary to deter, alleviate, and counteract bad faith abuse of the
judicial process, such as any significant interference with the court’s
administration of its core functions. . . .”  Toles v. Toles, 45
S.W.3d 252, 266-67 (Tex. App.–Dallas 2001, pet. denied).  A trial court’s sanctions
order involves two separate decisions: whether to impose a sanction, and the
decision of what sanction to impose.  Davis v. Rupe, 307 S.W.3d
528, 530-31 (Tex. App.–Dallas 2010, no pet.).  In the discovery context,
sanctions are imposed to ensure compliance with discovery rules, to deter other
litigants from similar misconduct, and to punish noncompliance.  Chrysler
Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992).  However, the
sanction may not be more severe than necessary to satisfy its legitimate
purpose.  Cire v. Cummings, 134 S.W.3d 835, 839 (Tex. 2004). 
Thus, a direct relationship must exist between the sanctioned conduct and the
sanction imposed so that the sanction is directed against the abuse and toward
remedying the prejudice caused the innocent party.  TransAmerican,
811 S.W.2d at 917.  

Sanctions
that strike pleadings, dismiss actions, and adjudicate claims are the most
devastating that a trial court can assess.  Id. at 917-18. 
Sanctions that adjudicate a party’s claims or defenses can be used only when a
party’s actions in the discovery process justify a presumption that its claims
or defenses lack merit.  Id. at 918.  Sanctions that adjudicate a
party’s claims or defenses “should not be assessed absent a party’s flagrant
bad faith or counsel’s callous disregard for the responsibilities of discovery
under the rules.”  Id. Consequently, a trial court must consider
the availability of lesser sanctions before imposing death penalty sanctions.  Cire,
134 S.W.3d at 840.   Additionally, a trial court is ordinarily required to test
the effectiveness of lesser sanctions by actually implementing and ordering
each sanction that would be appropriate to promote compliance with the trial
court’s orders.  Id. at 842. The trial court is not
required to make findings before imposing discovery sanctions.  TransAmerican,
811 S.W.2d at 919 n.9.  But it is obviously helpful to have findings in cases
of severe sanctions that outline the conduct the trial court considered to
merit sanctions.  Id.

In
this case, Gerald III’s discovery was not answered to his satisfaction.  Gerald
III is entitled to rely on the discovery rules, and Geaux is required to comply
with the discovery rules.  Further, the trial court is justified in punishing
noncompliance.  But here, the history of discovery abuse, which we have
discussed above, does not justify a presumption that Geaux’s claims and
defenses lack merit. See id. at 918.  In fact, it appears
likely that many documents responsive to the requested discovery were
previously produced in connection with Bundy’s business valuation—a business
valuation that he apparently was able to complete.  Certainly, Gerald III is
entitled to all documents responsive to his first request for production, because
the objections were waived, and more documents and information related to his
second request for production and first set of interrogatories.  However, the
record simply does not support a finding that Geaux’s claims and defenses lack
merit. And we note that neither the trial court’s sanctions order or its clarification
order contains such a finding. 

This
case also is not the “exceptional case where it is fully apparent and
documented that no lesser sanctions would promote compliance with the discovery
rule. . . .”  See Cire, 134 S.W.3d at 842.  The trial
court had granted two previous motions to compel related to failure to respond
to discovery.[8] 
In one of those orders, the trial court sanctioned Katherine and Geaux the
reasonable attorney’s fees incurred by Gerald III.[9]  The
trial court’s sanction order states that prior sanctions awarded by the court
were ineffective in deterring Katherine and Geaux from engaging in sanctionable
discovery abuse.  But the record shows that the only sanction ordered was the
attorney’s fees referenced above, a sanction that had yet to be enforced.  The
record does not show that the trial court considered lesser sanctions or that
lesser sanctions would have been ineffective in promoting compliance with the
discovery rules.

Further,
Gerald III’s argument that Katherine and Geaux ignored two previous trial court
orders to respond to Gerald III’s first requests for production is misleading
at best.  Gerald III, as part of his first motion to compel, argued that
responses should be made to his first request for production.  Gerald III
stated that these requests seek information either directly related or at least
relevant to Gerald III’s ownership interest in Geaux.  But Katherine responded
to Gerald III’s motion to compel and argued that “the parties entered into
another Rule 11 Agreement on November 19, 2007, a copy of which is attached. .
. .”  Pursuant to that Rule 11 Agreement, the deadline for responding to Gerald
III’s first requests for production had not passed when Gerald III filed his
first motion to compel. This fact was recognized by the trial court and even Gerald
III’s counsel.  It is axiomatic that a failure to respond to discovery before
it is due is not bad faith.

Similarly,
the record belies Gerald III’s argument that the trial court’s order on Gerald
III’s third motion to compel required responses to his first request for
production.  No mention is made of Gerald III’s first request for production in
his third motion to compel or in the trial court’s order granting the third
motion to compel.  Again, it is clear from the record that those discovery
responses were not due when Gerald III filed his third motion to compel.  To
remove all doubt, the trial court granted the motion for protection filed by
Geaux and specifically ordered that “all objections and responses to any discovery
requests propounded by [Gerald III] shall not be due until November 12, 2009. .
. .”  Katherine and Geaux did not ignore two previous trial court orders to
respond to Gerald III’s first requests for production.            

We
agree with Katherine and Geaux that the trial court’s sanctions order of
December 21, 2009, is an abuse of discretion.  Because we have determined that
the trial court abused its discretion in its sanctions order, we need not
address the trial court’s denial of the motion to reconsider filed by Geaux or Katherine’s
contention that the discovery which formed the basis of the sanctions order was
not directed to her.  See Tex. R. App. P. 47.1, 52.8(d). 

 

Gerald III’s Remaining Arguments

Gerald
III argues that Katherine and Geaux are not entitled to mandamus relief because
of laches and failure to comply with Texas Rule of Appellate Procedure 52.7.  Additionally,
Gerald III asserts a somewhat cryptic constitutional argument.  We address each
of these arguments in turn.

Laches
bars a mandamus action when a relator offers no justification for an
unreasonable delay in seeking relief.  See Rivercenter Assocs. v. Rivera,
858 S.W.2d 366, 367 (Tex. 1993) (waiting over four months before taking any
action in pursuing rights to relief resulted in laches where record revealed no
justification for the delay).  Here, one month and one day after the trial
court’s sanction order, Katherine and Geaux responded by presenting a motion to
reconsider.  Eight days after the motion to reconsider was denied, Katherine and
Geaux attended a pretrial hearing in which the trial court clarified the effect
of its order.  Less than six weeks later, Katherine and Geaux filed their
petition for writ of mandamus.  Following the trial court’s clarification of
its sanctions order, Katherine and Geaux had to hire new counsel.  Reporter’s
records had to be ordered and prepared, counsel had to familiarize themselves with
an extremely large record, and the petition for writ of mandamus had to be
prepared. Under the circumstances, it appears to us Katherine and Geaux
proceeded quickly in seeking relief.  Thus, their petition for writ of mandamus
is not barred by laches.  See In re SCI Texas Funeral Servs., Inc.,
236 S.W.3d 759, 761 (Tex. 2007) (delay of slightly less than six months not laches
because of time necessary to obtain records of numerous discovery hearings and
brief issues for court).

In
an original proceeding, the relator must file a certified or sworn copy of
every document that is material to the petition for writ of mandamus and an
authenticated transcript, including exhibits, of any relevant testimony from
the underlying proceeding.  Tex. R. App. P.
52.7(a).  The record may be supplemented.  Tex. R. App. P. 52.7(b).  Here, we have reviewed the
record, including the supplemental and second supplemental mandamus record. 
Katherine and Geaux complied with Texas Rule of Appellate Procedure 52.7.

Gerald
III’s constitutional argument is that the mandamus procedure denies Gerald III due
process as provided by the Texas Constitution because he cannot “bring a
‘cross-mandamus’ to seek relief greater than that awarded by the [trial
court].”  Gerald III further argues that not allowing him to seek relief pertaining
to the sanctions order “effectively deprives him of an open court and Due Process.”
 Finally, Gerald III states in a footnote that  “[i]f the [appellate court]
reaches this issue and agrees that [Gerald III’s] due process rights are
violated by one-sided mandamus review, [Gerald III] respectfully seeks leave to
file a cross-mandamus or cross-issue to assert his complaints.”  The argument
contained in a response to a petition for writ of mandamus “must be confined to
the issues or points presented in the petition.”  Tex. R. App. P. 52.4(d).  Gerald III’s constitutional
argument is not in response to the petition filed by Katherine and Geaux, but
instead seeks leave to make affirmative claims on behalf of Gerald III. 
Further, Gerald III’s constitutional argument is not clear and concise with
appropriate citations to authorities and to the appendix or record.  Tex. R. App. P. 52.3(h), 52.4.  Finally,
if Gerald III believes that he is entitled to mandamus relief, he does not need
leave to file a cross mandamus petition but may simply file his own mandamus
petition.

 

Disposition

Based
on our review of the entire record, we have concluded that the trial court
abused its discretion in ordering death penalty sanctions against Katherine and
Geaux.  Thus, we conditionally grant the petition for writ of mandamus. 
We trust that the trial court will promptly vacate the portion of its December
21, 2009, order granting death penalty sanctions.  The writ will issue only if
the trial court fails to comply with this court’s opinion and order within
ten days from the date of the opinion and order.  The trial court shall
furnish this court, within the time for compliance with this court’s opinion
and order, a certified copy of its order evidencing its compliance.  Our stay
of April 12, 2010, is lifted.

 

                                                                                                Brian Hoyle

                                                                                                  
   Justice

 

 

 

Opinion delivered August 17,
2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)








ORDER

 

AUGUST 17, 2010

 

no. 12-10-00086-CV

 

IN RE:  KATHERINE K.
FACKRELL, INDIVIDUALLY;

KATHERINE K. FACKRELL, ON
BEHALF OF GEAUX

CORPORATION; AND GEAUX
CORPORATION,

Relator







 

ORIGINAL
PROCEEDING







 

                                    On
this day came on to be considered on the petition for writ of mandamus filed by
KATHERINE K. FACKRELL, INDIVIDUALLY; KATHERINE K. FACKRELL, ON BEHALF
OF GEAUX CORPORATION; AND GEAUX CORPORATION, Relator, responses of
counsel, and the record.  Said petition for writ of mandamus having been filed
herein on March 30, 2010, and the same having been duly considered, because it
is the opinion of this Court that the petition is meritorious, it is there
CONSIDERED, ADJUDGED AND ORDERED that the petition for writ of mandamus be, and
the same is, conditionally granted.

                                    And
because it is further the opinion of this Court that the trial judge will act
promptly and vacate the portion of its December 21, 2009, order granting death
penalty sanctions, the writ will not issue unless the Honorable Kerry Russell,
Judge of the 7th Judicial District Court, Smith County, Texas, fails to comply
with this Court’s opinion and order within ten (10) days from the date
of the opinion and order.  This Court’s stay of April 12, 2010, is lifted.

                                    Brian
Hoyle, Justice.

                                    Panel consisted of Worthen, C.J., Griffith, J., and
Hoyle, J.

 

 









                        [1] The respondent is
the Honorable Kerry Russell, Judge of the 7th Judicial District Court, Smith
County, Texas.

 





                [2]
The sanctions at issue were ordered as a result of Gerald III’s eighth motion
to compel.  We provide a procedural background of the entire case because a
trial court can consider a pattern of discovery abuse when ordering sanctions. 
See Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913,
919 n.8 (Tex. 1991).





                        [3] Gerald III filed
a ninth motion to compel on March 23, 2010.  Because Katherine and Geaux
complain of trial court orders that predate Gerald III’s ninth motion to
compel, we do not consider this motion in our review.

 





                        [4] Generally, we
review a petition for writ of mandamus based on the record before the trial
court at the time of the complained of order.  However, a trial court can
render a petition for writ of mandamus moot by withdrawing the order at issue. 
See In re Home State County Mut. Ins. Co., No. 12-07-00062-CV,
2007 Tex. App. LEXIS 3752, at *5 (Tex. App.—Tyler 2007, orig. proceeding) (mem.
op.).  

 





                        [5] Katherine also
had brought claims on her own behalf against Gerald III.  Those claims were
nonsuited on January 22, 2010.  Therefore, the trial court’s clarifying order
does not state whether Katherine’s individual claims were struck as part of the
sanctions imposed against her.

 





                        [6] Specifically, the
trial court stated that “it is inequitable and inappropriate to prohibit a
party from responding in any way to a new pleading (petition) filed after a
death penalty sanction order is granted as a matter of fundamental fairness.”

 





                        [7] We are not certain
whether the trial court would allow Geaux to bring new claims against Gerald
III.  For purposes of this opinion, however, that question is immaterial.





                        [8] The trial court
also granted a motion to compel related to Geaux’s failure to timely pay its portion
of Bundy’s fee.

 





                        [9] By later order,
the trial court determined that the issue of attorney’s fees would be decided
at the end of the case unless additional discovery disputes required a change
of course.