# NO. 12-10-00086-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: KATHERINE K. FACKRELL,* | § | |
| *INDIVIDUALLY; KATHERINE K.* | | |
| *FACKRELL, ON BEHALF OF GEAUX* | § | *ORIGINAL PROCEEDING* |
| *CORPORATION; AND GEAUX* | | |
| *CORPORATION, RELATORS* | § | |

*MEMORANDUM OPINION*

By petition for writ of mandamus, Katherine K. Fackrell, individually; Katherine K. Fackrell on behalf of Geaux Corporation; and Geaux Corporation challenge the trial court's order of sanctions against them and subsequent order denying their motion to reconsider.[1] The real party in interest is Gerald E. Fackrell, III. We conditionally grant the petition.

## BACKGROUND[2]

The underlying lawsuit involves a dispute between family members who are directors and officers in Geaux Corporation, a closely held corporation. At the time the lawsuit was filed, Katherine Fackrell and her stepson, Gerald E. Fackrell, III, were each a director and a 50% owner of Geaux. Gerald Fackrell, Jr., who is Katherine's husband and Gerald III's father, was also a director of Geaux. Katherine brought suit on behalf of the corporation against Gerald III. Gerald Jr. is aligned with Geaux in this litigation.

**The Rule 11 Agreements and Discovery**

Almost immediately after suit was filed, the parties entered into a Rule 11 Agreement. Gerald III agreed to participate in directors' meetings and execute loan documents for Geaux. And Geaux

---

[1] The respondent is the Honorable Kerry Russell, Judge of the 7th Judicial District Court, Smith County, Texas.

[2] The sanctions at issue were ordered as a result of Gerald III's eighth motion to compel. We provide a procedural background of the entire case because a trial court can consider a pattern of discovery abuse when ordering sanctions. *See Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919 n.8 (Tex. 1991).

agreed to pay Gerald III a salary and not remove him as an officer until May 31, 2007. Months later, on August 31, 2007, the parties entered into another Rule 11 Agreement in which Gerald III agreed to sell his interest in Geaux and other related holdings. The parties agreed to select a business valuation expert to assess the value of Gerald III's interest. According to the agreement, the expert's assessment was not binding on the parties. If the parties could not agree on terms of a buyout of Gerald III's interest after negotiations and, if necessary, mediation, the matter would proceed to court.

On October 29, 2007, Gerald III filed counterclaims and third party claims against Katherine, Gerald Jr., and Geaux. Katherine and Gerald, Jr. were sued individually and as officers, directors, and shareholders of Geaux. Along with these claims, Gerald III served his first request for production on Katherine "for the benefit of Geaux Corporation." By a Rule 11 Agreement signed on November 19, 2007, the parties agreed that "all objections and responses to all discovery requests served by [Gerald III] shall not be due until 45 days after the date [the mediator] confirms in writing that mediation was unsuccessful." Approximately one year later, Katherine, Gerald Jr., and Geaux filed answers to Gerald III's counterclaims and third party claims against them. They also filed individual counterclaims against Gerald III.

On June 12, 2009, Gerald III sent his second request for production and first set of interrogatories to Geaux. On July 15, 2009, Geaux filed objections to Gerald III's second request for production and first set of interrogatories, asserting that the request and interrogatories violated the parties' November 19, 2007 Rule 11 Agreement. Geaux objected that mediation had not occurred and that objections and responses to discovery were not due until forty-five days after the mediator confirmed in writing that the mediation was unsuccessful. Geaux also filed a motion for protection based on the Rule 11 Agreement. The trial court granted Geaux's motion for protection and stated that "all objections and responses to any discovery requests propounded by [Gerald III] shall not be due until November 12, 2009. . . ." The trial court noted in the order that the due date was the forty-fifth day after the mediation scheduled by the parties.

Counsel for Katherine, Gerald Jr., and Geaux filed a motion to withdraw from the case, and the trial court granted the motion. Counsel reminded Katherine, Gerald Jr., and Geaux about several deadlines, but there is no record that he reminded them of outstanding discovery. Gerald III's attorney reminded Katherine, Gerald Jr., and Geaux that they needed to respond to Gerald III's second request

2

for production and first set of interrogatories to Geaux. There is no record that they were reminded of Gerald III's first request for production. On the due date, November 12, 2009, Geaux filed objections and responses to Gerald III's second request for production and first set of interrogatories. No timely objections or responses were filed to Gerald III's first request for production.

**The Motions to Compel**

On September 3, 2008, Gerald III filed the first of what would become many motions to compel. This first motion to compel was directed to the "Plaintiff," but did not specifically identify the plaintiff. By this motion to compel, Gerald III sought the production of documents necessary for the business valuation expert, Rusty Bundy, to complete the valuation of Gerald III's interest in Geaux. The documents were requested by Bundy in electronic mail correspondence sent to counsel for Geaux on August 17 and August 18, 2008. Additionally, Gerald III sought the production of documents responsive to his first request for production. Gerald III stated that this request sought information either directly related or at least relevant to his ownership interest in Geaux.

Katherine responded to Gerald III's motion to compel. In her response, Katherine stated, in part, that "the parties entered into another Rule 11 Agreement on November 19, 2007, a copy of which is attached. . . ." Pursuant to that Rule 11 Agreement, the deadline for responding to Gerald III's first request for production had not passed when Gerald III filed his first motion to compel. The trial court conducted a hearing on Gerald III's motion to compel and recognized that the discovery responses were not due. In fact, Gerald III's attorney admitted at the hearing that Geaux "didn't have to respond specifically to [Gerald III's] request for production" because of the Rule 11 Agreement, but instead needed to produce the documents necessary for Bundy to complete his business valuation. After the hearing, the trial court "in all things" granted Gerald III's motion to compel and ordered Katherine and Geaux to produce the documents Bundy requested. But the trial court's order did not specifically refer to Gerald III's first request for production.

Gerald III then filed a first amended second motion to compel complaining that Geaux was not paying his salary as agreed in the first Rule 11 Agreement. The trial court denied the motion.

Gerald III filed a third motion to compel on February 19, 2009. By this motion, Gerald III sought the production of additional documents requested by Bundy on January 16, 2009, but did not mention his first request for production. Gerald III also sought sanctions against Katherine and Geaux

3

in the amount of attorney's fees expended in the drafting, filing, and prosecuting of the third motion to compel. Geaux responded to this motion. After a hearing, the trial court granted Gerald III's third motion to compel, ordered Katherine and Geaux to produce the documents requested by Bundy, and sanctioned Katherine and Geaux in the amount of the reasonable attorney's fees Gerald III incurred in drafting, filing, and prosecuting his third motion to compel. However, the trial court did not specify the amount of the reasonable attorney's fees Gerald III had incurred for the completion of these tasks.

Gerald III then requested $2,556.00 as the reasonable attorney's fees incurred in the drafting, filing, and prosecuting of Gerald III's third motion to compel. Katherine and Geaux believed that amount was unreasonable and did not pay it. Consequently, on April 16, 2009, Gerald III filed a motion to compel attorney's fees, his fourth motion to compel. Katherine and Geaux responded. The trial court determined that Gerald III's motion to compel attorney's fees "shall be taken up at the conclusion of the case, unless the court feels it needs to be resolved because of further discovery disputes."

Gerald III then filed a fifth motion to compel against Katherine and Geaux seeking payment of Geaux's portion of Bundy's bill. Gerald III also sought sanctions in the amount of $1,000.00 for attorney's fees and costs incurred in filing his fifth motion to compel. Katherine filed a response to Gerald III's fifth motion to compel. The trial court granted the motion to compel payment to Bundy and held the request for sanctions under advisement pending prompt compliance with the court's order.

On July 9, 2009, Gerald III filed his sixth motion to compel. Gerald III's sixth motion sought to compel Katherine, Gerald Jr., and Geaux to produce additional information regarding their expert witnesses. The trial court did not rule on this motion. On July 15, 2009, Geaux filed a motion for protection seeking an order enforcing the November 19, 2007 Rule 11 Agreement.

On August 4, 2009, Gerald III filed his seventh motion to compel in which he sought to compel Katherine, Gerald Jr., and Geaux to respond to Gerald III's second request for production and first set of interrogatories. Katherine, Gerald Jr., and Geaux filed a response to this motion. The trial court did not grant Gerald III's seventh motion to compel, but instead granted Geaux's motion for protection and made the discovery responses due on November 12, 2009.

On November 25, 2009, Gerald III filed his eighth motion to compel in which he sought to compel Geaux to respond to Gerald III's first request for production, second request for production, and first set of interrogatories. Geaux did not respond to Gerald III's eighth motion to compel. On

4

December 21, 2009, the trial court, without conducting a hearing, granted the eighth motion to compel and ordered "death penalty sanctions [imposed] against Plaintiffs/Counter Defendants." The trial court further ordered that "Plaintiffs/Counter Defendants" pay Gerald III $4,000.00 for attorney's fees and costs related to the eighth motion to compel. The trial court's order includes a finding that "Plaintiffs have engaged in conduct that constitutes sanctionable discovery abuse, and that prior [s]anctions awarded by [the trial court] have not been satisfactory in deterring Plaintiffs/Counter Defendants from engaging in such conduct." On January 22, 2010, Geaux filed a motion for reconsideration. Gerald III responded to the motion to reconsider, and on February 10, 2010, the trial court denied the motion.[3] On Gerald III's motion and after a hearing, the trial court signed an order on April 1, 2010 clarifying the December 21, 2009, sanctions order.

After the clarification order, Katherine and Geaux filed a petition for writ of mandamus in this court contending that the trial court's order of death penalty sanctions constitutes an abuse of discretion. They also filed a motion for temporary relief requesting a stay of the trial in the underlying action pending a ruling on the merits in this proceeding. We granted the stay.

## THE SANCTIONS

Initially, we must determine the status of the trial court's December 21, 2009, sanctions order following the entry of the clarification order signed by the trial court on April 1, 2010. Katherine and Geaux argue that the sanctions include striking their pleadings and dismissing the actions they brought. Gerald III argues that the trial court simply imposed a monetary sanction of $4,000.00 and an inability to proffer documents as evidence that should have been produced in response to the discovery requests.[4]

The trial court held a pretrial hearing on February 18, 2010, during which it became clear that the trial court believed the death penalty sanctions applied to Katherine as well as Geaux. However,

---

[3] Gerald III filed a ninth motion to compel on March 23, 2010. Because Katherine and Geaux complain of trial court orders that predate Gerald III's ninth motion to compel, we do not consider this motion in our review.

[4] Generally, we review a petition for writ of mandamus based on the record before the trial court at the time of the complained of order. However, a trial court can render a petition for writ of mandamus moot by withdrawing the order at issue. *See In re Home State County Mut. Ins. Co.*, No. 12-07-00062-CV, 2007 Tex. App. LEXIS 3752, at *5 (Tex. App.—Tyler 2007, orig. proceeding) (mem. op.).

5

even after the hearing, questions remained concerning what petitions, answers, and counterclaims had been struck, and the effect that the striking of these pleadings would have on the trial of the case.

Gerald III filed a motion for clarification on March 11, 2010. On that same date, Gerald III filed a motion for default judgment against Katherine. The next day, Gerald III filed amended counterclaims and amended third party claims against Katherine, Gerald Jr., and Geaux. On April 1, 2010, the trial court signed an order clarifying its prior sanctions order. The trial court set out thirty-eight findings or conclusions in its clarifying order. The trial court found that the discovery in dispute in Gerald III's eighth motion to compel was served to Geaux and not Katherine individually. Nevertheless, the trial court specifically found that its sanction order struck the following pleadings: (1) the original petition and application for injunctive relief filed by Katherine for the benefit of Geaux, ( 2) the original answer of Katherine, and (3) the original answer and counterclaim of Geaux.[5] However, because Gerald III had filed amended pleadings, the trial court further clarified the sanctions order to allow Katherine and Geaux to respond to the new pleading.[6] The trial court further stated, "The [sanctions order does] not restrict any future filings by the parties (other than the stricken pleadings [cannot] be refiled.)" Finally, the trial court denied Gerald III's motion for default judgment against Katherine for the reasons set forth in the trial court's clarifying order.

After giving full effect to every statement made by the trial court, we conclude that under the December 21, 2009, sanctions order, Katherine and Geaux cannot contest the allegations and claims made by Gerald III prior to that order. But they can contest new allegations and claims included in Gerald III's amended pleading filed thereafter. Further, Geaux cannot bring the claims made against Gerald III that were filed prior to the sanctions order.[7] Thus, the trial court's December 21, 2009, sanctions order, even after clarification, has the effect of striking pleadings, dismissing actions, and adjudicating claims brought against Katherine and by and against Geaux.

---

[5] Katherine also had brought claims on her own behalf against Gerald III. Those claims were nonsuited on January 22, 2010. Therefore, the trial court's clarifying order does not state whether Katherine's individual claims were struck as part of the sanctions imposed against her.

[6] Specifically, the trial court stated that "it is inequitable and inappropriate to prohibit a party from responding in any way to a new pleading (petition) filed after a death penalty sanction order is granted as a matter of fundamental fairness."

[7] We are not certain whether the trial court would allow Geaux to bring new claims against Gerald III. For purposes

Ordinarily, mandamus will issue to correct a clear abuse of discretion where there is no adequate remedy by appeal. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992). With respect to the resolution of factual matters or matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker*, 827 S.W.2d at 839. In such matters, the relators must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Consequently, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* The party seeking the writ of mandamus has the burden of showing that the trial court abused its discretion. *In re E. Tex. Med. Ctr. Athens*, 154 S.W.3d 933, 935 (Tex. App.—Tyler 2005, orig. proceeding).

When a trial court imposes sanctions that have the effect of adjudicating a dispute, whether by striking pleadings, dismissing an action, or rendering a default judgment, but do not result in rendition of an appealable judgment, the eventual remedy by appeal is inadequate. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919 (Tex. 1991). Because the trial court's order here struck Katherine's and Geaux's pleadings, appeal is an inadequate remedy. We therefore focus our inquiry on whether the trial court abused its discretion in ordering the sanctions.

## DEATH PENALTY SANCTIONS

A trial court may impose sanctions for filing frivolous pleadings and for discovery abuse. *See* TEX. R. CIV. P. 13, 215. Under its inherent power, a trial court may impose sanctions "to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the court's administration of its core functions. . . ." *Toles v. Toles*, 45 S.W.3d 252, 266-67 (Tex. App.–Dallas 2001, pet. denied). A trial court's sanctions order involves two separate decisions: whether to impose a sanction, and the decision of what sanction to impose. *Davis v.*

---

of this opinion, however, that question is immaterial.

*Rupe*, 307 S.W.3d 528, 530-31 (Tex. App.–Dallas 2010, no pet.). In the discovery context, sanctions are imposed to ensure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish noncompliance. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). However, the sanction may not be more severe than necessary to satisfy its legitimate purpose. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). Thus, a direct relationship must exist between the sanctioned conduct and the sanction imposed so that the sanction is directed against the abuse and toward remedying the prejudice caused the innocent party. *TransAmerican*, 811 S.W.2d at 917.

Sanctions that strike pleadings, dismiss actions, and adjudicate claims are the most devastating that a trial court can assess. *Id.* at 917-18. Sanctions that adjudicate a party's claims or defenses can be used only when a party's actions in the discovery process justify a presumption that its claims or defenses lack merit. *Id.* at 918. Sanctions that adjudicate a party's claims or defenses "should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.* Consequently, a trial court must consider the availability of lesser sanctions before imposing death penalty sanctions. *Cire*, 134 S.W.3d at 840. Additionally, a trial court is ordinarily required to test the effectiveness of lesser sanctions by actually implementing and ordering each sanction that would be appropriate to promote compliance with the trial court's orders. *Id.* at 842. The trial court is not required to make findings before imposing discovery sanctions. *TransAmerican*, 811 S.W.2d at 919 n.9. But it is obviously helpful to have findings in cases of severe sanctions that outline the conduct the trial court considered to merit sanctions. *Id.*

In this case, Gerald III's discovery was not answered to his satisfaction. Gerald III is entitled to rely on the discovery rules, and Geaux is required to comply with the discovery rules. Further, the trial court is justified in punishing noncompliance. But here, the history of discovery abuse, which we have discussed above, does not justify a presumption that Geaux's claims and defenses lack merit. *See id.* at 918. In fact, it appears likely that many documents responsive to the requested discovery were previously produced in connection with Bundy's business valuation—a business valuation that he apparently was able to complete. Certainly, Gerald III is entitled to all documents responsive to his first request for production, because the objections were waived, and more documents and information related to his second request for production and first set of interrogatories. However, the record simply

8

does not support a finding that Geaux's claims and defenses lack merit. And we note that neither the trial court's sanctions order or its clarification order contains such a finding.

This case also is not the "exceptional case where it is fully apparent and documented that no lesser sanctions would promote compliance with the discovery rule. . . ." *See Cire*, 134 S.W.3d at 842. The trial court had granted two previous motions to compel related to failure to respond to discovery.[8] In one of those orders, the trial court sanctioned Katherine and Geaux the reasonable attorney's fees incurred by Gerald III.[9] The trial court's sanction order states that prior sanctions awarded by the court were ineffective in deterring Katherine and Geaux from engaging in sanctionable discovery abuse. But the record shows that the only sanction ordered was the attorney's fees referenced above, a sanction that had yet to be enforced. The record does not show that the trial court considered lesser sanctions or that lesser sanctions would have been ineffective in promoting compliance with the discovery rules.

Further, Gerald III's argument that Katherine and Geaux ignored two previous trial court orders to respond to Gerald III's first requests for production is misleading at best. Gerald III, as part of his first motion to compel, argued that responses should be made to his first request for production. Gerald III stated that these requests seek information either directly related or at least relevant to Gerald III's ownership interest in Geaux. But Katherine responded to Gerald III's motion to compel and argued that "the parties entered into another Rule 11 Agreement on November 19, 2007, a copy of which is attached. . . ." Pursuant to that Rule 11 Agreement, the deadline for responding to Gerald III's first requests for production had not passed when Gerald III filed his first motion to compel. This fact was recognized by the trial court and even Gerald III's counsel. It is axiomatic that a failure to respond to discovery before it is due is not bad faith.

Similarly, the record belies Gerald III's argument that the trial court's order on Gerald III's third motion to compel required responses to his first request for production. No mention is made of Gerald III's first request for production in his third motion to compel or in the trial court's order granting the third motion to compel. Again, it is clear from the record that those discovery responses were not due when Gerald III filed his third motion to compel. To remove all doubt, the trial court granted the

---

[8] The trial court also granted a motion to compel related to Geaux's failure to timely pay its portion of Bundy's fee.

[9] By later order, the trial court determined that the issue of attorney's fees would be decided at the end of the case unless additional discovery disputes required a change of course.

motion for protection filed by Geaux and specifically ordered that "all objections and responses to any discovery requests propounded by [Gerald III] shall not be due until November 12, 2009. . . ." Katherine and Geaux did not ignore two previous trial court orders to respond to Gerald III's first requests for production.

We agree with Katherine and Geaux that the trial court's sanctions order of December 21, 2009, is an abuse of discretion. Because we have determined that the trial court abused its discretion in its sanctions order, we need not address the trial court's denial of the motion to reconsider filed by Geaux or Katherine's contention that the discovery which formed the basis of the sanctions order was not directed to her. *See* TEX. R. APP. P. 47.1, 52.8(d).

## GERALD III'S REMAINING ARGUMENTS

Gerald III argues that Katherine and Geaux are not entitled to mandamus relief because of laches and failure to comply with Texas Rule of Appellate Procedure 52.7. Additionally, Gerald III asserts a somewhat cryptic constitutional argument. We address each of these arguments in turn.

Laches bars a mandamus action when a relator offers no justification for an unreasonable delay in seeking relief. *See **Rivercenter Assocs. v. Rivera***, 858 S.W.2d 366, 367 (Tex. 1993) (waiting over four months before taking any action in pursuing rights to relief resulted in laches where record revealed no justification for the delay). Here, one month and one day after the trial court's sanction order, Katherine and Geaux responded by presenting a motion to reconsider. Eight days after the motion to reconsider was denied, Katherine and Geaux attended a pretrial hearing in which the trial court clarified the effect of its order. Less than six weeks later, Katherine and Geaux filed their petition for writ of mandamus. Following the trial court's clarification of its sanctions order, Katherine and Geaux had to hire new counsel. Reporter's records had to be ordered and prepared, counsel had to familiarize themselves with an extremely large record, and the petition for writ of mandamus had to be prepared. Under the circumstances, it appears to us Katherine and Geaux proceeded quickly in seeking relief. Thus, their petition for writ of mandamus is not barred by laches. *See **In re SCI Texas Funeral Servs., Inc.***, 236 S.W.3d 759, 761 (Tex. 2007) (delay of slightly less than six months not laches because of time necessary to obtain records of numerous discovery hearings and brief issues for court).

10

In an original proceeding, the relator must file a certified or sworn copy of every document that is material to the petition for writ of mandamus and an authenticated transcript, including exhibits, of any relevant testimony from the underlying proceeding. TEX. R. APP. P. 52.7(a). The record may be supplemented. TEX. R. APP. P. 52.7(b). Here, we have reviewed the record, including the supplemental and second supplemental mandamus record. Katherine and Geaux complied with Texas Rule of Appellate Procedure 52.7.

Gerald III's constitutional argument is that the mandamus procedure denies Gerald III due process as provided by the Texas Constitution because he cannot "bring a 'cross-mandamus' to seek relief greater than that awarded by the [trial court]." Gerald III further argues that not allowing him to seek relief pertaining to the sanctions order "effectively deprives him of an open court and Due Process." Finally, Gerald III states in a footnote that "[i]f the [appellate court] reaches this issue and agrees that [Gerald III's] due process rights are violated by one-sided mandamus review, [Gerald III] respectfully seeks leave to file a cross-mandamus or cross-issue to assert his complaints." The argument contained in a response to a petition for writ of mandamus "must be confined to the issues or points presented in the petition." TEX. R. APP. P. 52.4(d). Gerald III's constitutional argument is not in response to the petition filed by Katherine and Geaux, but instead seeks leave to make affirmative claims on behalf of Gerald III. Further, Gerald III's constitutional argument is not clear and concise with appropriate citations to authorities and to the appendix or record. TEX. R. APP. P. 52.3(h), 52.4. Finally, if Gerald III believes that he is entitled to mandamus relief, he does not need leave to file a cross mandamus petition but may simply file his own mandamus petition.

### DISPOSITION

Based on our review of the entire record, we have concluded that the trial court abused its discretion in ordering death penalty sanctions against Katherine and Geaux. Thus, we *conditionally grant* the petition for writ of mandamus. We trust that the trial court will promptly vacate the portion of its December 21, 2009, order granting death penalty sanctions. The writ will issue only if the trial court fails to comply with this court's opinion and order *within ten days from the date of the opinion and order*. The trial court shall furnish this court, within the time for compliance with this court's opinion and order, a certified copy of its order evidencing its compliance. Our stay of April 12, 2010, is *lifted*.

11

**BRIAN HOYLE**
Justice

Opinion delivered August 17, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

12

# *ORDER*

AUGUST 17, 2010

NO. 12-10-00086-CV

## IN RE:  KATHERINE K. FACKRELL, INDIVIDUALLY; KATHERINE K. FACKRELL, ON BEHALF OF GEAUX CORPORATION; AND GEAUX CORPORATION,
RELATOR

## ORIGINAL PROCEEDING

On this day came on to be considered on the petition for writ of mandamus filed by **KATHERINE K. FACKRELL, INDIVIDUALLY; KATHERINE K. FACKRELL, ON BEHALF OF GEAUX CORPORATION; AND GEAUX CORPORATION**, Relator, responses of counsel, and the record.  Said petition for writ of mandamus having been filed herein on March 30, 2010, and the same having been duly considered, because it is the opinion of this Court that the petition is meritorious, it is there CONSIDERED, ADJUDGED AND ORDERED that the petition for writ of mandamus be, and the same is, **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate the portion of its December 21, 2009, order granting death penalty sanctions, the writ will not issue unless the Honorable Kerry Russell, Judge of the 7th Judicial District Court, Smith County, Texas, fails to comply with this Court's opinion and order **within ten (10) days** from the date of the opinion and order.  This Court's stay of April 12, 2010, is **lifted**.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*