

NUMBER 13-14-00242-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARIA DEL ROSARIO CORTINAS,                                    Appellant,

v.

NOE LOPEZ,                                                      Appellee.

### On appeal from the 24th District Court of Goliad County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

In this appeal, appellant Maria Del Rosario Cortinas argues that the trial court erred

in dismissing her personal injury suit against appellee, Noe Lopez, as a "death penalty"

discovery sanction. We reverse and remand.

### I. BACKGROUND

Cortinas sued Lopez for injuries she suffered as a result of a motor vehicle collision

that took place on September 28, 2008, in Brownsville, Texas. Cortinas alleged in her original petition, dated September 23, 2010, that Lopez negligently rear-ended her vehicle, causing her to suffer "excruciating pain" and "extensive physical and emotional injuries," including a herniated disc in her neck, and necessitating her hospitalization at Valley Baptist Medical Center.

Lopez was insured by Reinsurance Company of America ("RCA") at the time of the collision and at the time the lawsuit was filed; however, RCA subsequently became insolvent and bankruptcy proceedings were instituted. Accordingly, on June 21, 2011, Lopez notified the trial court of RCA's bankruptcy, that RCA had been designated an "impaired insurer" by the Texas Commissioner of Insurance, and that the Texas Property and Casualty Insurance Guaranty Association ("TPCIGA") was therefore obligated by the Texas Property and Casualty Insurance Guaranty Act (the "Guaranty Act") to defend Lopez. *See* TEX. INS. CODE ANN. § 462.309 (West, Westlaw through 2013 3d C.S.). Lopez further notified the trial court that the Guaranty Act mandates a six-month stay of proceedings "[t]o permit [TPCIGA] to properly defend [the] pending cause of action . . . ." *Id.* § 462.309 (West, Westlaw through 2013 3d C.S.). Pursuant to the statute, the trial court proceedings were stayed from June 8, 2011 to December 8, 2011.

On April 9, 2012, Lopez served discovery requests upon Cortinas, including the following requests for production:

> 20. Provide a true and correct copy of the declaration page or pages for all policies of Insurance listed in Interrogatories to Plaintiff.[1]
>
> 21. Provide a letter from your employer and/or employer of your family member stating the insurance coverages and benefits available to each Plaintiff through that employer, if any.

---

[1] No interrogatory responses appear in the record.

22.     An executed affidavit regarding other insurance in substantially the same form as that attached hereto in Exhibit A.

In response to request number 20, Cortinas provided a copy of her Texas Auto Insurance identification card. In response to request number 21, Cortinas provided a copy of her Valley Baptist Health Plans health insurance identification card. In response to request number 22, Cortinas attached an affidavit stating that she was covered by an auto insurance policy with carrier "Insurance Corner" but that she has not received any benefits from that policy as a result of the September 2008 collision.[2] The affidavit stated, "For all of the policies of insurance I have listed above or in Exhibit A, I have attached a correct copy of the declarations pages, if available"; but no declarations pages were attached. The affidavit made no specific mention of Cortinas's health insurance policy.

Lopez then filed a motion to compel discovery in which he complained that Cortinas's responses were incomplete because she did not produce a declarations page "for each policy of insurance that would be applicable to her claims." Lopez argued in his motion that this omission was "vital" because, under the Guaranty Act, a plaintiff seeking recovery from an individual defended by TPCIGA must first exhaust her rights under any other applicable insurance policies. *See* TEX. INS. CODE ANN. § 462.251 (West, Westlaw through 2013 3d C.S.).[3] After a hearing on September 18, 2012, the trial court granted

---

[2] It is apparent from the record that Insurance Corner is not an insurance carrier but, rather, Cortinas's insurance agent.

[3] Section 462.251(a) of the Guaranty Act provides:

Any person who has a claim under an insurance policy, other than an impaired insurer's policy, and whose claim arises from the same facts, injury, or loss giving rise to a claim against an impaired insurer or the insurer's insured, must first exhaust the person's rights under the insurance policy, including:

(1)     a claim for benefits under a workers' compensation insurance policy or a claim for indemnity or medical benefits under a health, disability, uninsured motorist,

3

the motion to compel and ordered Cortinas to "respond completely to Defendant's Request for Production Numbers 20 and 21 on or before October 2, 2012." Cortinas then produced a supplemental response in which she stated that she was not in possession of any documents responsive to the request.[4]

Lopez subsequently filed a motion to dismiss as a sanction against Cortinas for her alleged failure to comply with the trial court's discovery order. *See* Tex. R. Civ. P. 215.2(b)(5). At a hearing on April 30, 2013, Cortinas's counsel gave the following explanation for why she had not produced the requested documentation:

> This is the issue we're having, Your Honor, and it boils down to this. In this accident my client had the very same insurance company that the defendant had. In other words, she had the same company that went out of business. She has gone to the—to Insurance Corner where she purchased her policy. She's asked for a copy of her dec page. She's written letters to the former company that's now out of business. They have told her that they cannot get a dec page for her because they're out of business and they don't even know where [their] files are.

Cortinas's counsel informed the court that he practiced due diligence in an attempt to obtain the declarations page for Cortinas's RCA policy, but that his efforts were to no avail.

In reply, Lopez's counsel did not argue that Cortinas should have produced the declarations page for her RCA policy. Instead, he stated:

> One of the—one of the problems in this case is that this policy with respect to [RCA] is just one of multiple policies that's available to the plaintiff. One

---

personal injury protection, medical payment, liability, or other insurance policy; and

(2)     the right to defense under the insurance policy.

Tex. Ins. Code Ann. § 462.251 (West, Westlaw through 2013 3d C.S.). TPCIGA and the defendant it represents are then entitled to "a full credit for the amount of the full applicable limits" of any other applicable policy, even if the plaintiff failed to timely file a claim. *See id.* §§ 462.252, 462.253 (West, Westlaw through 2013 3d C.S.).

[4] Neither the September 18, 2012 hearing transcript nor Cortinas's supplemental response appear in the record.

4

of the policies that's available is a health insurance policy. That health insurance policy has made payments on behalf of plaintiff's treatment. In the affidavit regarding other insurance with respect to that health insurance policy, the amount that the plaintiff states was paid by health insurance is zero. But, Your Honor, we've received an affidavit—a billing records affidavit that indicates that United Health Care, the health insurer for the plaintiff has, in fact, paid something in the amount of $893. . . . We do understand that this—that Valley Baptist Medical Center has been paid by plaintiff's health insurance carrier, but we haven't been able to receive those declarations policies.

Lopez's counsel asked the court to dismiss the case or, in the alternative, to abate the case for twenty days to allow Cortinas to obtain the necessary documents and, if she did not comply, to dismiss the case after that time period expired.

After the parties concluded their arguments, Cortinas's counsel informed the trial court that he was having difficulty contacting his client and may need to file a motion to withdraw. The trial court did not rule on Lopez's motion to dismiss but abated the case for thirty days to allow Cortinas's counsel to continue his attempts to both contact Cortinas and obtain the documentation desired by Lopez.

The trial court held another hearing on August 13, 2013. Lopez's counsel argued that Cortinas "has not exhausted any benefits through [her] health insurance," "[h]as not provided proof that that insurance coverage has been exhausted, and has not—still has not presented any declarations pages for her auto insurance." Cortinas's counsel stated that he was able to contact his client and would not be withdrawing from the case. He informed the trial court that, as to the RCA policy declarations page, "I'm unable to get [them] because there's no office. . . . [T]he company is gone, so that's an issue that I'm not sure how we're going to resolve." As to the health insurance policy, Cortinas's counsel stated that he requested explanation of benefits ("EOB") forms from Cortinas's insurer on July 26, 2013, and that "[m]y understanding is that they're on their way."

5

Cortinas's counsel further represented to the court that Lopez's counsel also sought a copy of a release of assignments Cortinas made upon her admission to Valley Baptist Medical Center. With respect to that document, counsel stated:

> We are having difficulty having the officials at Valley Baptist understand what it is, number one, and, number two, put a signature on it. . . . So basically my response is this, Your Honor, I understand [Lopez's counsel] wants their homework and he wants it now, but we have—we have worked—we've put a lot of manpower in this, a lot of attorney time, and a lot of assistant time trying to get the responsive documents, but these documents are coming from other companies, from other parties, and we're doing what we can to get this case resolved as well.

The trial court stated that he was not inclined to grant the motion to dismiss at that time but would instead grant Cortinas ninety additional days to comply, during which time the case would be abated. The court stated, however, that "[i]f you're in here still telling me you can't get the documents and the Insurance Code says you need the documents, most likely I will be dismissing at that point." Cortinas's counsel replied, "I understand."

On November 13, 2013, the trial court rendered an order stating that "any and all claims asserted against Defendant shall be dismissed with prejudice on December 12, 2013, unless Plaintiff obtains and furnishes a valid Release of Assignment of Lien from Plaintiff's healthcare providers and obtains and furnishes any and all Explanation of Benefit documentation from Plaintiff's health insurance carrier."[5]

On December 11, 2013, Lopez filed a motion requesting entry of an order granting its previously-filed motion to dismiss. In the motion, Lopez stated that Cortinas had not provided any EOB forms from her health insurance carrier. Lopez acknowledged that Cortinas had provided a "Release of Assignments" executed by a hospital representative,

---

[5] The order indicates, and Cortinas states on appeal, that a third dismissal hearing was held prior to the entry of this order. The record contains no transcript of any such hearing.

but he argued that this document was not compliant with the November 13 order because it was not a "Release of Assignment of Lien."[6]  The trial court granted Lopez's motion on December 18, 2013, rendering a final judgment dismissing Cortinas's lawsuit with prejudice.

Cortinas then filed a motion to reconsider accompanied by affidavits detailing the

---

[6] The "Release of Assignments" document was prepared by Cortinas's counsel and presented to the hospital for execution.  The document, a copy of which was attached to Lopez's motion for entry of order, states as follows:

> VALLEY BAPTIST MEDICAL CENTER BROWNSVILLE (the "Hospital") rendered services to [Cortinas] on or about September 26, 2008.  The services resulted from a motor vehicle collision that occurred on or about that date.  As of the date of this instrument, the current balance owed is $188.64.

> VALLEY BAPTIST MEDICAL CENTER . . . is the legal and equitable holder of a hospital lien in the above-referenced amount, which has been duly recorded in Cameron County, Texas.

> VALLEY BAPTIST MEDICAL CENTER, as a condition of its services rendered to [Cortinas], required her to assign and transfer "to the hospital, and hospital based physicians (i.e., radiologists, pathologists, anesthesiologists, emergency department physicians) all rights, title and interest in all benefits/monies payable for serves / supplies rendered, including but not limited to group medical / indemnity / self-insured / ERISA benefits / coverage, PIP, UIM / UM, auto / homeowner insurance, and all causes of action against any party or entity that may be responsible for payment of benefits / monies regardless of whether or not [Cortinas] ultimately settle[s her] claim with a non admission liability provision."

> VALLEY BAPTIST MEDICAL CENTER, also as a condition of its services rendered to [Cortinas], required her to assign and transfer to the hospital "any and all claims, demands, suits, remedies, guarantees, liens, and /or causes of action, at law or in equity, either in contract or in tort, statutory or otherwise, as well as any other claim, in whole or in part, which [she] may now have or may hereafter hold or possess, known or unknown, on account of, growing out of, relating to or concerning, whether directly or indirectly, proximately or remotely, any acts, omissions, events, transactions or occurrences that have occurred or failed to occur which resulted in injuries for which the hospital has provided and/or will provide medical goods and services to [her]."

> VALLEY BAPTIST MEDICAL CENTER further required [Cortinas] to assign and transfer to the hospital, "any and all rights (including appeal rights), title and interest in any and all benefits, monies or other form of compensation paid or to be paid on [her] behalf as a result of this injury / illness."

> VALLEY BAPTIST MEDICAL CENTER does hereby release and forever discharge all assignments made by [Cortinas] to the hospital as described above, *without altering or affecting in any way its rights with respect to the duly recorded hospital lien as described above*.

(Emphasis added.)

7

various efforts made by Cortinas's counsel and his staff to obtain the required documents. Cortinas's counsel averred in his affidavit, among other things, that he contacted the hospital's compliance director; that the compliance director "indicated that she would require the express approval of the hospital's legal department in order to sign the type of release we needed"; that "to speed up the process, I prepared my own form for a Release of Assignments for the legal department's review and signature"; and that "I received the executed Release of Assignments form and produced it to Defense counsel immediately upon my receipt, which was within the court-imposed deadline." The motion to reconsider was also accompanied by copies of the police report and hospital admission form, both dated September 26, 2008. At a hearing on March 25, 2014, Cortinas's counsel stated, among other things, that he contacted Cortinas's health insurance carrier and was informed that there would be no EOB forms generated because Cortinas's claims were being denied. The trial court denied the motion to reconsider the next day, and this appeal followed.

## II. Discussion

### A. Applicable Law and Standard of Review

So-called "death penalty sanctions" are authorized by rule 215.2(b) of the Texas Rules of Civil Procedure, which provides in part:

> If a party . . . fails to comply with proper discovery requests or to obey an order to provide or permit discovery, . . . the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (5)    an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part

8

thereof, or rendering a judgment by default against the disobedient party . . . .

TEX. R. CIV. P. 215.2(b).  Whether the imposition of sanctions is "just," as required by the rule, is measured by two standards:

> First, a direct relationship must exist between the offensive conduct and the sanction imposed.  This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. . . .  Second, just sanctions must not be excessive.  The punishment should fit the crime.  A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes.  It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

*TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

Moreover, "[d]iscovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit."  *Id.* at 918.  For example, "if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it."  *Id.*  But "[s]anctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules."  *Id.*  "Even then, lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender."  *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

A ruling on a motion for sanctions is reviewed for abuse of discretion, *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004), as is a ruling on a motion for new trial.  *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006).  The test for an abuse of discretion is not

9

whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Cire*, 134 S.W.3d at 838–39. We reverse only if the ruling was arbitrary or unreasonable. *Id.* at 839.

## B.    Analysis

By her first issue, Cortinas contends that the trial court cannot require her "to create new documents or produce items that are not in her custody, possession, or control." We construe this issue as challenging the propriety of the discovery requests and discovery orders with which Cortinas was deemed to have not complied.

In response to Cortinas's first issue, Lopez contends that Cortinas waived any complaint about the discovery requests themselves (as opposed to the sanctions imposed for failing to comply with those requests) because she did not object to them. We agree. A party objecting to a request for written discovery must make that objection "in writing—either in the response or in a separate document—within the time for response." TEX. R. CIV. P. 193.2(a). "An objection that is not made within the time required . . . is waived unless the court excuses the waiver for good cause shown." TEX. R. CIV. P. 193.2(e). Here, Cortinas did not assert any objection to Lopez's discovery request until she argued in her motion to reconsider that the request impermissibly asks for documents not in her custody, possession, or control. Moreover, she did not object to the trial court's December 13, 2013 order—which, for the first time, required production of a "Release of Assignment of Lien"[7]—until the deadline for production as stated in that

---

[7] We note that, according to the record, Lopez never served any formal discovery request for EOB forms or a "Release of Assignment of Lien" form. Further, the Guaranty Act does not appear to require that a plaintiff produce any such forms in order to bring suit against a TPCIGA-defended party. *See generally id.* §§ 462.001–.351. Because the record does not contain a transcript of the hearing apparently held prior

10

order had passed. Finally, Cortinas did not attempt to establish "good cause" for her failure to timely object to the discovery requests and orders. *See id.* Accordingly, we overrule Cortinas's first issue as waived.

By her second issue, Cortinas contends that dismissal was improper because she "did not abuse the discovery process while exercising due diligence in attempting to comply with the court's order." Specifically, she contends that she showed "good cause . . . for her inability to obtain, create, and produce the documents sought" and that "the sanction was overly severe."[8] Lopez contends, on the other hand, that Cortinas had "ample opportunity to comply" with the requests and orders and that she "failed to avail herself of numerous opportunities over two years to avoid dismissal."

We agree with Cortinas that the sanctions imposed were unjust in light of all the circumstances. It is true, as Lopez notes, that the dismissal order came over five years after the accident made the basis of the suit. However, according to the record, the first formal discovery request was made by Lopez on April 9, 2012, after the mandatory six-month stay expired. Cortinas timely complied with that request. She did not include a declarations page for her auto insurance policy; however, counsel explained at the April 30, 2013 hearing that this was because her insurer—the same insurer that had covered

---

to the November 13, 2013 order, *see supra* n.5, we cannot discern why the production of these particular documents was compelled. In any event, as set forth above, Cortinas has waived any complaint regarding that order because she did not object to it prior to the production deadline. *See* TEX. R. CIV. P. 193.2.

[8] In response to Cortinas's second issue, Lopez argues that we may not consider the affidavits Cortinas filed with her motion to reconsider in evaluating whether the trial court erred by dismissing the suit. We agree. Because the affidavits were not before the trial court at the time the case was dismissed, we may not consider them in determining whether dismissal was proper. Moreover, "[a] party seeking a new trial on grounds of newly-discovered evidence must demonstrate to the trial court that," among other things, "the evidence has come to its knowledge since the trial . . . ." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Cortinas made no attempt to show that the facts recited in the affidavits "came to [her] knowledge" after the December 13, 2013 dismissal.

Lopez—was no longer in business. Lopez's counsel did not dispute that this fact constituted good cause for Cortinas's failure to produce the auto policy declarations page. Instead, Lopez's counsel essentially withdrew his original request and made a new request, not previously included in any formal written discovery, for EOBs that would show the amount of any funds paid to the hospital under Cortinas's health insurance policy. Later, at the August 13, 2013 hearing, Cortinas's counsel stated that he requested the EOBs from the health insurance carrier on July 26, 2013[9] and that his "understanding" was that the documents were "on their way."[10]

As to the "Release of Assignment of Lien" document, the record reveals much confusion. No formal request for this document appears in the record, and it is unclear whether or when any informal request may have been made. What is clear, however, is that Cortinas's counsel made a diligent effort to obtain such a document from the hospital. Counsel took it upon himself to prepare a "Release of Assignment" which provided that the hospital was releasing and discharging all assignments Cortinas made upon her admission. The duly executed "Release of Assignment" form was served upon Lopez prior to the discovery deadline. Lopez took exception to the fact that the release preserved the hospital lien, which is imposed by statute, *see* TEX. PROP. CODE ANN.

---

[9] Lopez emphasizes on appeal that Cortinas's counsel failed to show diligence because he first requested EOB forms from the health insurance carrier on July 26, 2013, which was "more than a year after they had been requested." But according to the record, the informal request for EOB forms was in fact first made at the April 30, 2013 hearing. The trial court then continued the hearing based on Cortinas's counsel's representation that he was having trouble contacting his client. In light of this background, counsel's delay in requesting EOB forms until July 26 does not appear unreasonable.

[10] At the motion to reconsider hearing, Cortinas's counsel explained that the health insurance carrier would not be providing any EOBs because Cortinas's claim was going to be denied anyway. Lopez's counsel did not dispute that this fact constituted good cause for Cortinas's failure to produce the EOBs, but again shifted the goalposts, arguing that "regardless of whether those claims may have been admitted or denied by the insurance carrier, there should be some explanation as to why those benefits were denied or whether those benefits were covered."

12

§ 55.002(a) (West, Westlaw through 2013 3d C.S.), but he did not cite any authority, and we find none, establishing that Cortinas was required to show that the hospital lien was released in order to sustain her action against Lopez. Accordingly, Cortinas's failure to provide a "Release of Assignment of Lien," though technically a violation of the November 13, 2013 discovery order, did not support a presumption that Cortinas's claim lacks merit. *See TransAmerican*, 811 S.W.2d at 917 ("Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.").

Finally, there is nothing in the record showing that the trial court ever considered the availability of sanctions less stringent than dismissal or whether such lesser sanctions would fully promote compliance, as strictly required by the second prong of the *TransAmerican* test. *See id.*; *see also Chrysler Corp.*, 841 S.W.2d at 849 (noting that "lesser sanctions must first be tested to determine whether they are adequate").[11] On appeal, Lopez does not address the issue of lesser sanctions but instead relies on the fact that, at the August 13, 2013 hearing, Cortinas's counsel acknowledged that he "underst[oo]d" that the trial court would likely dismiss the case in ninety days if the documents were not produced. But this remark does not show that Cortinas consented to dismissal or that dismissal was "just"; and it has absolutely no bearing on the issue of whether the trial court fulfilled its duty, as stated by the Texas Supreme Court, to "consider" and "test" less stringent sanctions before imposing the "death penalty." *See*

---

[11] At the motion to reconsider hearing, Cortinas's counsel suggested, as an example of sanctions less stringent than dismissal, that the trial court could have ordered Cortinas to pay the expenses incurred by Lopez's counsel for travel to and from the various hearings. Other examples are provided in the rule authorizing death penalty sanctions. *See* TEX. R. CIV. P. 215.2(b)(5) (noting that, if a party fails to comply with discovery requests or orders, the court may strike pleadings or stay proceedings until the order is obeyed).

*TransAmerican*, 811 S.W.2d at 817; *see also Chrysler Corp.*, 841 S.W.2d at 849. Because the trial court acted without reference to these guiding rules and principles, it abused its discretion in dismissing the case. *See Cire*, 134 S.W.3d at 838–39. Cortinas's second issue is sustained.

### III. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
10th day of December, 2014.

14